Thomas M. WEIDA, Appellant–
Defendant,

v.

Donald KEGARISE and Kathy
Kegarise, Appellees–
Plaintiffs.

No. 66A03–0406–CV–247.

Court of Appeals of Indiana.

May 5, 2005.

Garrett V. Conover, Kopka, Pinkus & Dolin, P.C., Crown Point, IN, Attorneys for Appellant.

Alan F. Hizer, Winamac, IN, Frank E. Tolbert, Miller, Tolbert, Muehlhausen, Muehlhausen, Groff & Damm, P.C., Logansport, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Thomas Weida admitted negligence in rear-ending Donald Kegarise in an automobile accident, but he disputed the amount of damages Kegarise claimed. At trial, the jury found in favor of Weida.

The trial court ordered a new trial subject to additur of $23,849.40 under Trial Rule 59(J) but failed to enter findings supporting its order. We remand for entry of the findings Rule 59 requires.

### Facts and Procedural History

Weida rear-ended Kegarise on February 25, 2002. The record contains little specific information about the accident because Weida stipulated that his fault caused the accident. The stipulation was as follows:

1. That Thomas M. Weida while driving a 1989 Plymouth Voyager, on February 25, 2002, and following the 1984 S–10 pickup operated by Donald Kegarise rear-ended the pickup being operated by Donald Kegarise near the intersection of C.R. 50 North with U.S. Hwy 35 while looking at a family member.

2. That Thomas M. Weida's negligence in the operation of his automobile was the proximate cause of the collision.

3. That Donald Kegarise was not negligent and could not have avoided the collision.

Appellant's App. p. 678.

Kegarise did not immediately seek medical treatment. Rather, he proceeded to the lumber yard that was his original destination, purchased lumber, and used the lumber in erecting a sign as part of his sign business.

Kegarise later sought medical and chiropractic treatment. He claimed injuries to his knee, lower back, and head from the accident. At trial, witnesses disputed the nature and causation of Kegarise's injuries, including which injuries may have pre-existed the accident. Kegarise also testified that he declined certain treatments, including injections, that could have decreased his pain.

Also at trial, Weida showed videotapes taken by investigators showing Kegarise, after the accident, actively engaged in construction of a building, performing tasks such as climbing a ladder and using a chainsaw. There was conflicting evidence about how much income Kegarise might have lost because of the accident. Kegarise's wife testified that she lost his companionship as a result of the accident.

In his closing argument to the jury, Weida's attorney stated that "we've admitted liability for this accident, and that's going to make part of your job easy." *Id.* at 667. He also told the jury that it could "[p]ay [Kegarise's] medical bills" because "he wouldn't have gone to see those doctors but for the accident." *Id.* The attorney quantified those bills at $9,539.76. He disputed other damages claimed by Kegarise, arguing that Kegarise failed to mitigate damages.

In its final instructions to the jury, the trial court reminded jurors of the stipulation regarding cause of the accident. The trial court also listed the injuries Kegarise claimed and stated that Kegarise "has the burden of proving these claims by a preponderance of the evidence." *Id.* at 680. The final instructions also stated that Weida had the burden to prove by a preponderance that Kegarise failed to mitigate his damages.[1] The trial court also gave the following instructions:

Plaintiffs, Donald Kegarise and Kathy Kegarise, have the burden of proving the following propositions:

---

1. Weida was apparently proceeding on the theory that Kegarise's failure to mitigate damages could amount to comparative fault on Kegarise's part. A recent decision by our supreme court eliminates any legal basis for that theory. *Kocher v. Getz,* 824 N.E.2d 671 (Ind.2005). This error has no effect on this appeal, however, because the jury found no liability.

1. That the Plaintiff, Donald Kegarise, was injured and;

2. That the negligence of the Defendant, Thomas M. Weida, was the proximate cause of the injuries and damages to Donald Kegarise and to any damages sustained by Kathy Kegarise.

If you find that Plaintiff has proven these propositions, then your verdict should be for the Plaintiffs....

You are instructed that the burden is upon the plaintiffs to [prove] each and every one of his claimed injuries or disabilities, to prove by a fair preponderance of the evidence in this cause, that not only such alleged injuries or disabilities exist, but they are proximately the result of the incident in question.

*Id.* at 688. Furthermore, the trial court gave the standard instruction that lawyers' arguments did not constitute evidence. The record reveals no objection to any of these instructions.

After deliberating less than two hours, the jury found in favor of Weida.

The Kegarises filed a motion to correct error, apparently seeking a new trial.[2] After a hearing, the trial court granted the motion. Its order stated, "the request for a new trial is granted subject to an additur in the amount of Twenty Three Thousand Eight Hundred Forty Nine Dollars and forty cents ($23,849.40). Counsel for the parties is [sic] given thirty (30) days to file an appeal, pay the additur, or schedule a new trial date." *Id.* at 7 (paragraphing omitted). This appeal ensued.

### Discussion and Decision

#### I.  Findings

This Court ordinarily reviews trial court decisions on motions for new trial for abuse of discretion. *City of Carmel v. Leeper Elec. Serv., Inc.,* 805 N.E.2d 389,

392 (Ind.Ct.App.2004), *trans. denied.* Trial Rule 59(J) governs motions to correct error. It states, in relevant part:

The court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error, including without limitation the following . . .:

(1) Grant a new trial;

(2) Enter final judgment;

(3) Alter, amend, modify or correct judgment; . . .

(5) In the case of excessive or inadequate damages, enter final judgment on the evidence for the amount of the proper damages, grant a new trial, or grant a new trial subject to additur or remittitur; . . .

(7) In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence.... [I]f a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such find-

---

**2.** The motion itself does not appear in the Appendix.

ing shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence.

Because the trial court granted a new trial, Trial Rule 59(J) plainly required the trial court to make specific findings "upon each material issue or element of the claim or defense upon which a new trial is granted" indicating the basis for the trial court's ruling. Without findings, this Court cannot properly review the trial court's decision, and the parties may only raise and respond to hypothetical arguments about the trial court's reasoning.

In one case, *State v. White*, 474 N.E.2d 995, 1000 (Ind.1985), our supreme court reviewed a trial court's grant of a new trial under Trial Rule 59 without making the findings the rule requires, stating, "if the court overrides the jury in its special domain and substitutes its verdict for theirs without a clear showing [by making specific findings] that the ends of justice required it, it is likely that they did not." Our supreme court therefore used the trial court's failure to make findings as the reason to reverse the trial court's grant of new trial and affirm the jury's verdict. In

other cases, however, courts have not gone so far. *See, e.g., Chafin v. Grayson,* 761 N.E.2d 474, 476 (Ind.Ct.App.2002) (remanding for findings while retaining jurisdiction); *Malacina v. Malacina,* 616 N.E.2d 1061, 1063 (Ind.Ct.App.1993) (remanding for findings).

We choose to vacate the trial court's order and remand this matter for findings under Trial Rule 59(J).[3] We cannot review the order granting a new trial, subject to conditions, without such findings. Even the Kegarises, in their brief, do not explain the amount of additur established by the trial court.[4]

## II. New Trial Order

In hopes of precluding the need for the parties to employ this Court again, we reiterate the principles the trial court should bring to bear on the motion to correct error. Rule 59(J) provides two bases for relief when the verdict "do[es] not accord with the evidence." T.R. 59(J). First, it may grant a new trial because the verdict "is clearly erroneous as contrary to or not supported by the evidence." *Id.* Second, it may do so because "the decision is against the weight of the evidence." *Id.* The rule requires the trial court to make findings in both situations, but the specifications governing the findings differ depending on whether the court orders a new trial because the verdict is contrary to the evidence or is against the weight of the evidence.

### A. Verdict Contrary to Evidence

The first option under Rule 59(J), a new trial because the verdict is

3. While Rule 59 gives the trial court responsibility to make findings, we note in this case that there is no indication in the record that either party asked the trial court for findings either before or after the trial court entered its Rule 59 order. As a practical matter, such a reminder from either of the parties might well have precluded the need for this appeal.

4. The additur amount is exactly 2.5 times the amount of the medical bill that Weida's counsel said the jury could pay, $9,539.76. Also, one expert testified to one year's loss of income of $23,624, Appellant's App. p. 307, a number that is close to but not exactly the additur amount.

contrary to the evidence, is not available in this case according to our review of the whole record. "When there is evidence supporting the jury's verdict, the trial court is not permitted to. set aside a jury verdict as clearly erroneous and order a new trial." *Karl v. Stein,* 749 N.E.2d 71, 82 (Ind.Ct.App.2001), *reh'g denied.* In this case, despite Weida's concession that he caused the accident, the trial court's unobjected-to instructions gave the jury the responsibility to determine whether Kegarise proved that his injuries were caused by the accident. The evidence at trial permitted the jury to conclude that the Kegarises' damages, if they sustained any, were not proximately caused by the accident.

### 1. Trial Evidence

■ As the case was presented to the jury, Weida only admitted that his negligence caused the accident. He did not admit all elements of the tort. To prevail against Weida, the Kegarises had to prove duty, breach of duty, and damages proximately caused by the breach. *Kennedy v. Guess, Inc.,* 806 N.E.2d 776, 783 (Ind. 2004), *reh'g denied.* Weida only stipulated to the first two elements. He never stipulated that he caused any particular damage to the Kegarises. The trial court properly instructed the jury that the Kegarises had the burden to prove injury proximately caused by Weida's negligence.

As to each element of damages the Kegarises alleged, the jury could have determined that the damages either did not exist or were not caused by Weida. A review of each claimed item of damages shows how the jury could have come to that determination. *See Karl,* 749 N.E.2d at 81–82 (reversing order for new trial after reviewing record to determine that jury verdict was supported by evidence).

Kegarise alleged that when his head hit the rear windshield of his truck on impact with Weida, he sustained a closed head injury. Weida's expert, however, found no clinical evidence of a closed head injury. Kegarise also alleged that he jammed his leg, which was on his truck's brake pedal at the time of impact, causing damage. Other evidence at trial, however, showed that Kegarise, who was 73 years old at the time of the accident, had previously had knee trouble. The evidence also showed that Kegarise declined some proffered treatment for pain, including medication and injections, that might have alleviated his pain.

Kegarise alleged hip, neck, and back trouble arising from the accident. The jury could have believed evidence at trial minimizing that complaint and its connection to the accident, including evidence that he complained of back and neck pain before the accident. The evidence that Kegarise did not follow prescribed treatment to alleviate pain also could support a jury determination that damage was not mitigated. Moreover, the video showing Kegarise performing construction tasks, including climbing a ladder and using a chainsaw, could be another basis for a jury determination that complaints relating to Kegarise's hip, neck, and back were not serious. Similarly, Kegarise's complaints of headaches might have been discounted by the jury because of evidence that he had headaches before the accident.

Kegarise's claim at trial for lost income was weakened by lack of complete documentation of his income before and after the accident. The court properly instructed the jury that it could draw a negative inference from this lack of documentation. *See, e.g., Dickison v. Hargitt,* 611 N.E.2d 691, 696 (Ind.Ct.App.1993) ("The failure to produce available evidence raises an inference that the evidence would have been

unfavorable had it been produced."). Also, the evidence tending to minimize the physical effect of the accident on Kegarise would tend to defeat the claim that any lost income was caused by the accident.

The jury's decision that Weida was not liable is also supported by the minimal damage to the vehicles involved and Kegarise's failure to seek medical treatment immediately after the accident. Instead of seeking treatment, Kegarise picked up a load of lumber and completed a construction project. While Kegarise can provide an explanation for this behavior consistent with his claim of damage from the accident, his actions also support a jury determination that Weida is not liable.

### 2. Judicial Admission

■ The Kegarises also argue that they are entitled to a new trial because Weida's attorney admitted at least $9,539.76 in damages in his closing argument. Weida's attorney told the jury, "I don't take issue with" that amount of medical bills "because he wouldn't have had to pay those bills if it wouldn't have been for this accident. Pay them." Appellant's App. p. 670.

■ The Kegarises characterize Weida's counsel's statement as a judicial admission. "While an attorney may make a judicial admission during opening statements which is binding on his client, such statement must be a clear and unequivocal admission of fact. Further, where there is ambiguity or doubt in a statement, it is presumed that the attorney did not intend to make an admission." *Sans v. Monticello Ins. Co.*, 718 N.E.2d 814, 821 n. 3 (Ind. Ct.App.1999), *trans. denied* (internal citations and quotations omitted). *See also Parker v. State*, 676 N.E.2d 1083, 1086 (Ind.Ct.App.1997) (holding that defendant may admit probation violation through attorney's unequivocal statement, relieving state of burden of proof); *Rollins Burdick*

*Hunter of Utah, Inc. v. Bd. of Tr. of Ball State Univ.*, 665 N.E.2d 914, 921 (Ind.Ct. App.1996) (holding that attorney can admit existence of contract by unequivocal statement in opening argument, relieving other party of burden of proof).

■ Weida's counsel's statement is not a judicial admission, however, because it was made during closing argument. "An attorney's clear and unequivocal admission of fact during *opening statement* constitutes a judicial admission that binds the client...." 13 Robert L. Miller, Jr., *Indiana Evidence* § 801.422, at 564–65 (2d ed. 1995 & 2004 Supp.) (emphasis added). The Kegarises have not cited, nor has this Court found, any Indiana authority for the proposition that counsel can make a judicial admission in closing argument. Rather, attorneys can bind their clients by unequivocal statements in pleadings or opening statements, before evidence is introduced; when such a statement is made before evidence is presented, it can speed the trial process by eliminating the need for proof on admitted items. In terms of the dynamics of the trial process, however, a lawyer's statement in closing argument—after both parties have rested—ought not alter the balance of evidence already introduced. *See also* 4 Clifford S. Fishman, *Jones on Evidence* § 27:34, at 532 (limiting judicial admissions to opening statements). This conclusion is bolstered by the jury instructions in this case, which told the jury that counsel's arguments were not evidence.

■ Also, Weida's counsel's remarks do not constitute a judicial admission because they were not a statement of fact but rather a statement of opinion regarding proper damages if the jury were to find liability. "The scope of a judicial admission by counsel is restricted to unequivocal statements as to matters of fact which

otherwise would require evidentiary proof; it does not extend to counsel's statement of his conception of the legal theory of a case." Michael H. Graham, *Fed. Practice & Procedure* § 7026, at 273 (Interim ed. 2000) (construing Federal Rules of Evidence in relation to judicial admissions).

Courts in other states have determined that counsels' statements were not judicial admissions in circumstances very similar to those in this case. In *Francis v. Pountney*, 972 P.2d 143 (Wyo.1999), the jury found for the defendant in a traffic accident case after determining that the plaintiff was not damaged. On appeal from denial of a new trial motion, the Wyoming Supreme Court rejected the plaintiff's contention that the defendant's counsel admitted in his closing argument that the plaintiff suffered damages:

> In determining whether a statement made by counsel is an admission, we must consider the circumstances of the case and the context of the statements. If ambiguity or doubt exists as to whether or not the attorneys statement was an admission, we presume that the attorney did not intend to make a judicial admission during his argument. With these principles in mind, we conclude that the statements made by [defendant]s attorney during her closing argument were not judicial admissions. The attorney was obviously expressing her personal opinion because she qualified each of her statements with the words "I think." Furthermore, when we consider the attorneys statements in the context of her entire closing argument and the circumstances of the case, it is clear that [defendant] did not concede that [plaintiff] had suffered damages as a result of the accident.

972 P.2d at 147 (internal citations omitted). Similarly, in *Anderson v. Watson*, 929 P.2d 6 (Colo.Ct.App.1996), *aff'd on other grounds by* 953 P.2d 1284 (Colo.1998), the Colorado Court of Appeals held that defendant's attorney's statement in closing argument that "the medical evidence says eight months" of pain occurred after an accident was not a judicial admission because it was not unequivocal in the context of the entire closing argument. 929 P.2d at 9–10. On that basis, it affirmed the jury's decision to award no damages for pain and suffering. *Id.* at 10.

In another case very similar to this one, *Tunender v. Minnaert*, 563 N.W.2d 849 (S.D.1997), a jury also declined to find damages in a rear-end automobile accident. The appellate court reversed the trial court's grant of a motion for new trial, ruling that defendant's counsel's statement in closing argument that the plaintiff "does ... deserve some compensation and that compensation would be in the amount of $10,000" was not a judicial admission. *Id.* at 853. In the context of a closing argument, when the jury had been instructed that the lawyers' arguments did not constitute evidence, the attorney's statement did not admit a fact but only represented his opinion regarding damages and therefore was not a binding judicial admission.

Weida's counsel's statements were not a judicial admission of liability. Because they were made in closing argument, after the evidence had been presented, and because they did not constitute factual statements, the remarks did not fulfill the requirements of a judicial admission.

## B. Verdict Against Weight of Evidence

■ The second basis for a new trial provided by Rule 59, that the jury's decision is against the weight of the evidence, remains open to the trial court on remand. This avenue for relief requires the trial

court to act as a "thirteenth juror."[5] In this situation, the judge may base an order for a new trial on his or her observation of the witnesses for their credibility, intelligence, and wisdom and determination whether, in the minds of reasonable persons, a contrary verdict should have been reached. *City of Carmel*, 805 N.E.2d at 392.

 If the trial court finds that the jury's decision is against the weight of the evidence, it must enter specific findings "relat[ing] the supporting and opposing evidence to each issue upon which a new trial is granted." T.R. 59(J). "If the trial court determines that the verdict is against the weight of the evidence, it has a duty to grant a new trial." *Indian Trucking v. Harber*, 752 N.E.2d 168, 178 (Ind.Ct.App. 2001). On remand, the trial court may evaluate the motion to correct error based on its determination of the weight of the evidence and, if it determines that relief is appropriate, support that determination by the detailed findings required by Rule 59.

If the trial court chooses to grant a new trial on this basis, it "shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair." T.R. 59(J). As stated above, it is not possible to determine the trial court's theory for ordering a new trial because the order is unsupported by the required findings. Under the rule, however, the order for "a new trial subject to additur" under Trial Rule 59(J)(5) must be in situations of "excessive or inadequate damages." If the trial court believed that the jury assessed inadequate damages (as indicated by the additur provision), it must also believe that the jury erred in giving a verdict in favor of the defendant. If the trial court's order was based on a determi-

nation that the weight of the evidence required judgment for the Kegarises, the trial court should follow the provision of Trial Rule 59 permitting the trial court to enter judgment. In so doing, the trial court should comply with relevant provisions of Rule 59 regarding necessary findings as well as those provisions permitting limitation of the issues in a new trial.

Vacated and remanded.

KIRSCH, C.J., and NAJAM, J., concur.

---

5. In this case, the trial judge would literally be the seventh juror, but we nevertheless use the common shorthand expression.