ATTORNEYS FOR APPELLANT
Garrett V. Conover
David Wilson
Merrillville, Indiana

ATTORNEYS FOR APPELLEES
Frank E. Tolbert
Logansport, Indiana

Alan F. Hizer
Winamac, Indiana

# In the
# Indiana Supreme Court

_____

No. 66S03-0508-CV-00377

THOMAS M. WEIDA,

*Appellant (Defendant below),*

v.

DONALD KEGARISE AND KATHY KEGARISE,

*Appellees (Plaintiffs below).*

_____

Appeal from the Pulaski Circuit Court, No. 66C01-0301-PL-00001
The Honorable Michael Anthony Shurn, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 66A03-0406-CV-00247

_____

**July 5, 2006**

**Shepard, Chief Justice.**

Setting aside a verdict because the trial court concludes that it is against the weight of the evidence is a weighty but well-recognized power of common law judges. Our rules require a judge who exercises this power to describe the reasons in some detail. When the trial court acts without giving reasons, the verdict should be reinstated on appeal.

1

## Facts and Procedural History

On February 25, 2002, Weida and Donald Kegarise were involved in an automobile accident in which Weida rear-ended Donald Kegarise's vehicle. Kegarise sued, alleging that Weida's negligence caused the accident, that he suffered injuries to the head, neck, back, hip, and knee, and that his business had suffered losses as a result of his inability to work. Kegarise's wife sued for loss of consortium. During a pre-trial conference, Weida stipulated to negligence in causing the accident, but challenged (as he did at trial) the "nature and extent" of Kegarise's injuries and his damage claims.

During closing arguments, however, Weida's counsel said to the jury, "we've admitted liability for this accident . . . . I'm going to make part of your job even easier. Pay his medical bills. We'll start with that. That's not – don't – hear me through. Because he wouldn't have gone to see those doctors but for the accident. Okay?" (Tr. at 649.) Final instructions to the jury included appropriate statements about the burden of proof and proximate cause. A standard preliminary instruction stated that "final arguments are not evidence." (Tr. at 40.)

After deliberating about two hours, the jury returned a verdict in Weida's favor. The Kegarises filed a motion to correct error seeking a new trial, and the court held a hearing. The court's subsequent order granting a new trial said, in totality:

### ORDER

The Court holds a telephonic case management conference with Frank E. Tolbert, counsel for the Plaintiffs, and David A. Wilson, counsel for the Defendant.

The Court, having taken the Plaintiff's Motion to Correct Error under advisement, hereby orders as follows:

1. That the Plaintiff's Motion to Correct Error as filed on March 31, 2004, is hereby granted, and the request for a new trial is granted subject to an additur in the amount of Twenty-Three Thousand Eight Hundred Forty-Nine Dollars and forty cents ($23,849.40).
2. Counsel for the parties are given thirty (30) days to file an appeal, pay the additur, or schedule a new trial date.

SO ORDERED this 3rd day of May, 2004

(Appellant's App. at 7.)

Weida appealed, arguing that the court's order did not comply with Indiana Trial Rule 59 because it did not include special findings and that the jury verdict should therefore be reinstated under the holding in State v. White, 474 N.E.2d 995, 999-1000 (Ind. 1985). (Br. Appellant at 6-8.)[1]

The Court of Appeals acknowledged the holding in White, but noted that "[i]n other cases, however, courts have not gone so far." Weida v. Kegarise, 826 N.E.2d 691, 695 (Ind. Ct. App. 2005) vacated. It cited several of its own opinions in which it remanded defective orders for new trials with instructions to include the findings specified in Trial Rule 59(J). Id. (citing Chafin v. Grayson, 761 N.E.2d 474, 476 (Ind. Ct. App. 2002) trans. denied; Malacina v. Malacina, 616 N.E.2d 1061, 1063 (Ind. Ct. App. 1993) trans. not sought). The Court of Appeals chose to follow the latter course and remanded with instructions to make the findings specified by rule. Weida, 826 N.E.2d at 695. We granted transfer.

## I. "Motion for a New Trial" Evolved to Trial Rule 59(J)

Historically, new trials could be granted in Indiana for numerous reasons. Indeed, as the principal remedy available to trial courts to correct errors it was long held that, "[a] new trial should be granted unless it clearly appears that substantial justice has been done by the verdict." Glover v. Stevenson, 126 Ind. 532, 26 N.E. 486 (1891). For nearly ninety years, Indiana statute provided a list of errors for which a new trial could be granted. In addition to the error occurring when "the verdict or decision is not sustained by sufficient evidence, or is contrary to law," that list included: irregularities in the court proceedings, jury misconduct, accident or surprise,

---

[1] Weida also presented alternative grounds for relief on appeal. Our determination that White resolves the appeal favorably to him obviates the need to address these arguments.

3

excessive or inadequate damages, error of law, and discovery of new evidence. See 1881 Ind. Acts 319-20 (Spec. Session); Ind. Statutes §§ 2-2401, 2-2404, 2-2406 (Bobbs-Merrill 1968).

Indiana courts recognized that the power to grant new trials extended to situations beyond those enumerated in statute. Indianapolis Life Ins. Co. v. Lundquist, 222 Ind. 359, 53 N.E.2d 338 (1944) (collecting cases). Subsequent adoption of the Indiana Rules of Civil Procedure did not alter this understanding, as Rule 59(A) incorporated both the then existing statutory provisions and language indicating that the list of potential errors was non-exhaustive. Ind. Civil Code Study Commission, Indiana Rules of Civil Procedure: Proposed Final Draft, 219 (1968); Edwin H. Greenebaum, Comment, Post Trial Motions Under the New Indiana Rules, 45 IND. L.J. 377, 381 (1970) ("A correct and reasonable reading of Trial Rule 59(E)(7) carries forward the traditional distinctions regarding when new trials are appropriate."). This list, replicating the statutory basis for new trials, disappeared from the Trial Rules through some 1989 amendments.

Of course, adoption of Rule 59 under the heading "Motion to Correct Error" rather than "New Trial" reflected a significant expansion of the remedies available to correct errors before final judgment is entered. Most notably, the rule radically altered the long-standing practice in which the only such remedy was a new trial, by "mak[ing] it patently clear that the court not only may, but must, consider various kinds of other relief." Ind. Civil Code Study Commission at 220. The language of Trial Rule 59(E) — now 59(J) — certainly indicated an express preference for the use of other remedies before the grant of a new trial in that it provides "the court shall direct final judgment to be entered or shall correct the error without a new trial." Ind. Trial Rule 59(E) (1970); Ind. Trial Rule 56(J) (2006) (emphasis added).

Nevertheless, the rule also provided, and still provides, that when such remedies are "shown to be impracticable or unfair to any of the parties or is otherwise improper" the trial court was still empowered to grant a new trial. Id. The inclusion of other remedies was not an effort to restrict the power to grant a new trial to any particular enumerated situation, but rather to limit the practice of granting new trials for any error by conditioning the exercise of that authority to those situations where a conclusion was reached that other relief could not effectively or fairly remedy the error.

4

Consistent with this history and these objectives, the present version sets out a non-exhaustive list of possible relief to be granted on a motion to correct error and outlines certain steps required for granting relief. It says in relevant part:

> The court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error, including without limitation the following with respect to all or some of the parties and all or some of the errors: . . .
>
>> (5) In the case of excessive or inadequate damages, enter final judgment on the evidence for the amount of the proper damages, grant a new trial, or grant a new trial subject to additur or remittitur; . . .
>>
>> (7) In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence . . . .
>
> In its order correcting error the court shall direct final judgment to be entered or shall correct the error without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence.

Ind. Trial Rule 59(J). We once called adherence to the substantive and procedural requirements granting a new trial under Rule 59(J) "paramount." Nissen Trampoline Co. v. Terre Haute First Nat'l Bank, 265 Ind. 457, 464, 358 N.E.2d 974, 978 (1976). A brief examination of the rule should reveal why.

Rule 59(J) requires that a trial court must be satisfied that some "prejudicial or harmful" error has occurred before any remedial action may be taken. Generally, when a court reaches this conclusion, it may take one of two steps: 1) enter final judgment, or 2) correct the error by some measure other than a new trial. If and only if such relief is "shown to be impracticable or unfair" may the court order a new trial, but that order is to be restricted only to those parties affected by the error, unless doing so would again be "impracticable or unfair" to some party to the proceedings. Ind. Trial Rule 59(J).

Indiana Trial Rule 59(J)(7) lists three instances when the trial court must take some specific action when correcting an error: when the verdict of a non-advisory jury is against the weight of evidence, when the verdict is clearly erroneous because it is contrary to or not supported by the evidence, and when, in a bench trial or when an advisory jury is involved, the court concludes the findings are against the weight of evidence. In the last two instances, a court should enter final judgment unless it would be "impracticable or unfair" to do so. In the case where the court concludes that a non-advisory jury's verdict is against the weight of evidence, it is to order a new trial.

Regardless of the form of relief the court orders, it "shall specify the general reasons therefor." Ind. Trial Rule 59(J). However, when a court grants a new trial because the verdict "do[es] not accord with the evidence" the court must make additional special findings. Id. Those findings must first indicate whether the court has determined that the verdict does not accord with the evidence because it is "against the weight of the evidence" or because it is "clearly erroneous as contrary to or not supported by the evidence." Id. The remaining content of the special findings will differ depending on which reason the court specifies at this stage.

If the court orders a new trial because the verdict is clearly erroneous or not supported by the evidence (as, for example, when proof is missing altogether on an element of a claim), it must explain why it chose this remedy rather than entering final judgment as directed by Ind.

6

Trial Rule 59(J)(7).[2]  If, however, the court, sitting in its role as a "thirteenth juror" in reviewing the evidence, orders the new trial because the verdict is against the weight of the evidence, the court "shall relate the supporting and opposing evidence to each issue upon which the new trial is granted."  Ind. Trial Rule 59(J) (emphasis added).

Weida is correct that when a court orders a new trial because the verdict is "against the weight of evidence," but fails to make the required special findings, the proper remedy is reinstatement of the jury verdict.  (Br. Appellant at 5-6) (citing State v. White, 474 N.E.2d 995, 1000 (Ind. 1985)).  Occasional contrary rulings by the Court of Appeals do not alter White as controlling authority.

When asked to determine if a new trial is warranted because the verdict is against the weight of the evidence, the trial judge acts as juror rather "than a mere umpire" and fulfills the judicial role having "ke[pt] his eyes and ears open to what was going on during the trial [in order to] pass upon the purely legal questions involved in the case, as well as determine the weight and sufficiency of the evidence to sustain the verdict." Bailey v. Kain, 135 Ind. App. 657, 663-64, 192 N.E.2d 486, 488-89 (1963).

White relied extensively on the 1976 opinion in Nissen Trampoline Co. v. Terre Haute First Nat'l Bank.[3]  In Nissen, this Court likewise examined a faulty order for a new trial and reversed for failure to provide sufficient specific findings.  265 Ind. at 464-66, 358 N.E.2d at 978-79.  We noted several key reasons why permitting a defective order would work an injustice. One reason was the inability of an appealing party to prepare adequate arguments, another was the delay any other remedy would necessitate, and a third was fear that doing otherwise would lead to appellate courts sifting through the record and weighing evidence.  Id.

---

[2] Several cases have specifically held that except in those cases where the "verdict, finding or judgment do not accord with the evidence," grant of a new trial need not be accompanied by special findings. E.g., Lake Mortg. Co. v. Fed. Nat'l. Mortg. Ass'n, 262 Ind. 601, 604-06, 321 N.E.2d 556, 558-59 (1975); State v. Johnson, 714 N.E.2d 1209, 1211 (Ind. Ct. App. 1999); Kirchoff v. Selby, 686 N.E.2d 121, 126 (Ind. Ct. App. 1997), affirmed in relevant part by Kirchoff v. Selby, 703 N.E.2d 644, 657 (Ind. 1998).
[3] 265 Ind. 457, 358 N.E.2d 974 (1976).

Most critical to our decision, however, was our recognition of the responsibility that accompanies the court's authority to order a new trial when the verdict was against the weight of evidence. That reason, as stated in Nissen and incorporated in White, rests on the purpose of ordering a new trial: "to erase the occasional unsupportable jury verdict . . . to supplant that which is irrational with something that is rational."[4] Id. at 464, 978. The court's supervisory role over the jury has been seen as a necessary element in maintaining the proper functioning of our justice system. Justice Hunter, while sitting on the Appellate Court, explained this well:

> The power of the trial judge to examine the whole case with a view toward securing a result not merely legal, but which also manifests justice, is a power not in derogation of the right to trial by jury as urged by the appellant; quite the contrary, is one of the historic safeguards of that right. This power, if exercised in pursuance of sound judicial discretion, is a power without which our jury system might become a capricious, fickle and intolerable tyranny under which no system of jurisprudence in a free society could long survive.

Bailey v. Kain, 135 Ind. App. 657, 671, 192 N.E.2d 486, 492 (1963).


Justice DeBruler explained that this "extraordinary and extreme" power can be properly used "only if it is based upon a complete analysis of the relevant facts and applicable law, and sets out on paper the constituent parts of that analysis." Nissen, 265 Ind. at 464-65, 358 N.E.2d at 978. Complete analysis is required because it is "compliance with the arduous and time-consuming requirements of the Rule which provides assurance to the parties and the courts that the judge's evaluation of the evidence is better than the evaluation of the jury." Id. Put another way, compliance with the requirement is necessary to assure the public that the justice system is safe not only from capricious or malicious juries, but also from usurpation by unrestrained judges. Explanations crafted after appellate remand — six months or a year after the trial court heard the evidence (or in this instance, two years) — represent an inadequate exercise of this obligation.

---

[4] This statement explaining the purpose behind granting a new trial was reiterated a year after Nissen, in Huff v. Travelers Indem. Co., 266 Ind. 414, 428-29, 363 N.E.2d 985, 994 (1977) (a judge "should grant a new trial when, after sifting and weighing the conflicting evidence and the credibility of the witnesses, he believes that a contrary result should have been reached in the minds of reasonable men.").

8

Moreover, the approach the Court of Appeals took here in remanding for entry of findings lifts the burden of enforcing Trial Rule 59(J) from the party who sought relief under the rule and reassigns it to the party opposite. That is to say, it makes the party who won the jury's verdict pay for the cost of appealing to enforce the requirement of findings (findings whose function is to vitiate the very verdict that party already won).

Of course, the obligation to make findings rests with the trial judge rather than with the party who sought relief under the rule. The moving party could legitimately take any number of steps to protect his interest in securing an adequate order for a new trial should the trial judge be persuaded to set aside the jury's verdict. Counsel might tender proposed findings that would track the arguments made in the Rule 59(J) motion. During the hearing on the motion, like the one held in this case, counsel might remind the court of the need for findings. If this proved unsuccessful, counsel might file a post-order request of the sort not mentioned in the Trial Rules, but regularly recognized in actual practice (denominating it, say, as a request for clarification or a request for a more particular order). All of these avenues are permissible.

Concerns about preservation of the balance between the judge and jury have not changed. As Justice Prentice observed, if a "court overrides the jury in its special domain and substitutes its verdict for theirs without a clear showing that the ends of justice require it, it is likely that they did not." White, 474 N.E.2d at 1000.

## II. Did the Court Act as a Thirteenth Juror?

A. Standard of Review. The Kegarises appear to argue that the order granting a new trial was based on a determination that the verdict was either against the weight of evidence, or contrary to the evidence. (Br. Appellees at 14.) In either instance, their arguments rest largely on assertions that much of the evidence at trial was unrebutted and that the jury erred in failing to consider Weida's statement during closing arguments as an admission of proximate cause and damages. Appellees therefore argue that sufficient evidence exists to support the trial court's determination and, consequently, that the court did not err in ordering a new trial. (Br. Appellees

9

at 12-14.) This, in turn, lends support to their contention that the new trial order should be upheld because "once the trial court grant[s] a new trial, [a reviewing court] would reverse the decision only for an abuse of discretion" (Resp. Pet. Trans. at 5), because if there was sufficient evidence to support the trial court's decision, it could not have been an abuse of discretion to grant a new trial.

Appellate courts do review the grant of a new trial under an abuse of discretion standard. Lake Mortg. Co. v. Fed. Nat'l. Mortg. Ass'n, 262 Ind. 601, 605-06, 321 N.E.2d 556, 559 (1975). The "strong presumption" of correctness that underlies that review, however, "arises only when the trial court, acting as a thirteenth juror, sets aside a jury verdict as against the preponderance of the evidence and supports such decision with special findings of fact as required by T.R. 59(E)(7)." Id. (now Trial Rule 59(J)(7)). Because the court in this case did not make such findings, the presumption of validity does not arise. So, we proceed to examine whether the trial judge here was acting as thirteenth juror.[5]

As the Court of Appeals rightly noted, where a jury verdict was returned that was clearly in favor of the defendant, the conclusion that the damages were inadequate indicates a corresponding conclusion that the jury returned an improper verdict. Weida v. Kegarise, 826 N.E.2d at 699. We largely agree with this analysis. In essence, as the Court of Appeals deduced, the effect of the order was to substitute the trial court's own opinion of the proper verdict for that of the jury. This is the hallmark of a court's exercise of its thirteenth juror prerogative.

Plaintiff's counsel argued during the hearing on the motion that the verdict was against the weight of the evidence. (Tr. at 688.) Counsel reviewed the evidence paying particular attention to that which supported the elements of damages and proximate cause. (Tr. at 694-703.) Counsel also returned to the issue of whether Weida's statement to the jury during closing

---

[5] The order in this case does not even "specify the general reasons" why corrective relief was granted. (Appellant's App. at 7.) Even before the adoption of Rule 59(J), Indiana courts had held that, as a practical matter, it is necessary for trial courts to include at least such a general statement when granting a new trial. Bailey v. Kain, 134 Ind. App. at 239, 187 N.E.2d at 367; Rife v. Karns, 133 Ind. App. 226, 227-28, 181 N.E.2d 239, 239-40 (1962). The adoption of the rule did not alter this procedural requirement. Huffman v. McKinney, 151 Ind. App. 238, 240-42; 278 N.E.2d 611, 613-14 (1972). The purpose behind this requirement is to ensure "good practice and to further the orderly administration of justice." Rife, 133 Ind. App. at 228, 181 N.E.2d at 240.

10

argument regarding medical damages constituted an admission of those damages and asserted that they should be considered evidence. (Tr. at 704.) This, of course, strongly suggests that the motion was made for a new trial based upon the belief that the verdict was against the weight of the evidence.

The Kegarises make similar arguments in their motion, their trial brief, and their appellate briefs, arguing that case law supported the contention that "Trial Rule 59(E) (now Trial Rule 59(J)) does allow the trial court to grant a new trial subject to additur. Subject to the principle of the thirteenth juror . . . the trial court can order a new trial because the jury's verdict, findings or judgment do not accord with the evidence." (Br. Appellees at 10.) Similarly, they note, "the trial court sitting as a 'thirteenth juror' [] heard this case . . . and pursuant to [the] Indiana Trial Rules, granted the relief about which Appellant complains." (Br. Resp. Pet. Trans. at 6.)[6]

However, the Kegarises also claim that the verdict is "contrary to the evidence" (Appellees' Supp. App. at 4), and ultimately conclude that "[a] decision for Weida is clearly erroneous and contrary to, and not supported by, the evidence of the record." (Br. Appellees at 14.) Nevertheless, they also insist "the admissions of counsel in Final Argument are clear, that there was liability for damages. Therefore, such a finding [that the verdict is against the weight of evidence] in the case at bar is unnecessary." (Br. Appellees at 14.) This same dual basis for argument is contained in the motion itself where the Kegarises claim that "the verdict returned in favor of the defendant . . . is contrary to law and that a judgment *Non obstante veredicto* should be entered for the plaintiff," (Appellees' Supp. App. at 2), and that "the Judgment for Defendant is contrary to the evidence." (Appellees' Supp. App. at 4.) These arguments suggest alternate positions (i.e, that the verdict was either against the weight of evidence or contrary to the evidence).

---

[6] Several times in the brief filed in support of the motion, the Kegarises' refer to the judge as a "thirteenth juror" – a term of art applied when the judge is determining if the verdict is against the weight of evidence. (Appellees' Supp. App. at 8-9); <u>Neher v. Hobbs</u>, 760 N.E.2d 602, 607 (Ind. 2002).

11

Nevertheless, the trial judge appears to have interpreted the motion and the briefs as being based on a claim that the verdict was against the weight of evidence. During his statements at the close of the hearing, the judge properly expressed concern with granting the motion, as he was "reluctant to tell those people [the members of the jury] they've made a mistake quite frankly, unless I feel, you know, that their decision is not sustainable." (Tr. at 717.) The judge expressed anxiety at overruling the jury saying "we had six good people – you know – even if they make a mistake, or it [the verdict] shouldn't have been [reached] or it's unfair to the Kegarises, my position is we've asked six good citizens to make a decision for us, and they made it." (Tr. at 718.) This indicates a conscientious judge. It also suggests the motion was ultimately granted because the weight of evidence was against the verdict.

Finally, the judge also indicated what his decision would likely hinge on: "I will have to decide whether it's sustainable and the – and at [the] last part [Weida's comment during closing argument] is some sort of an admission which would have [been] granted." (Tr. at 718.) This statement suggests that the court's grant of a new trial rested upon the error of the jury in not considering the statement made by Weida's counsel during closing arguments. That is, it seems to suggest in granting the motion that the court may have considered that evidence as admissible, and therefore sufficient to overturn the verdict of the jury.

Of course, this could also simply suggest that the court believed that the failure to indicate to the jury that the statement could be considered evidence was an error that required correction under Trial Rule 59. However, the order gives no indication of this point, and we are unable to make any estimate of the accuracy of this supposition. This, more than anything else, underscores the need for strict compliance with the requirements of Trial Rule 59(J) in order to ensure its continued viability.[7]

Despite this possible second interpretation of the court's statements, on balance, the material before us suggests that the trial court concluded the verdict was against the weight of

---

[7] It also serves as a significant reminder of the potential danger in approving a remedy wherein the appellate courts weigh evidence, as it is sorely tempting to examine the record and, "in the interests of justice," craft a decision based on our own interpretation of the evidence. Like the Sirens of mythology, such action would merely lead to shipwreck. Like Odysseus, we must restrain ourselves.

evidence. Although this material is not entirely conclusive, proper deference to the decision of the jury requires extreme caution and supports our conclusion that no matter the form of the order, it flowed from a decision that the weight of evidence was against the verdict. This case clearly falls under the rule announced in White, 474 N.E.2d at 1000.

## Conclusion

We direct reinstatement of the jury's verdict.

**Dickson, Sullivan, Boehm, and Rucker, JJ., concur.**