Shon M. LEROY, Appellant–Defendant,

v.

Michelle KUCHARSKI, Appellee–Plaintiff.

No. 02A03–0701–CV–16.

Court of Appeals of Indiana.

Dec. 13, 2007.

Michael H. Michmerhuizen, James J. O'Connor, Barrett & McNagny, Fort Wayne, IN, Attorneys for Appellant.

Dennis R. Brown, Dennis H. Geisleman, Geisleman & Brown, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Shon M. Leroy appeals the trial court's grant of a motion to correct error in favor of Michelle Kucharski. Leroy raises one issue, which we revise and restate as whether the trial court abused its discretion by setting aside the jury verdict and ordering a new trial in Kucharski's negligence action against Leroy. We affirm.

The relevant facts follow. Lima Road, located in Fort Wayne, comprises two northbound lanes, two southbound, and is divided by a median. Graham Drive, running east and west, intersects Lima Road at a stop sign. On the afternoon of September 4, 2003, Kucharski and Leroy were involved in an automobile collision at this intersection. On February 22, 2005, Kucharski filed a complaint against Leroy, alleging that she suffered from severe personal injuries caused by Leroy's negligent operation of his automobile.

At trial, Kucharski testified that she was driving southbound on Lima Road in the inside lane when she noticed that traffic in the outside lane was slowing down. The speed limit on Lima Road is 45 miles per hour and she was "going between 40 and 45." Transcript at 59. Leroy, traveling eastbound, had been waiting at the stop sign on Graham Drive to turn left onto northbound Lima Road when a driver going southbound in the outside lane slowed down and gestured for him to turn. According to Kucharski, Leroy then crossed in front of her, and, although she applied her brakes, their cars collided in the inside lane. On cross examination, Kucharski stated that her speed at impact "could have been 30–35" miles per hour. Id. at 59. According to a written report from her physician, she had estimated that she was "traveling 45 miles per hour at the time of impact." Id. at 121–122.

At the scene of the accident, Leroy told Fort Wayne Police Officer Jack Barbour that one car had stopped to let him turn and that he "pulled out and did not see [Kucharski] and got hit." Id. at 44–45. Officer Barbour prepared a diagram of the collision locating it in Kucharski's lane. Leroy later testified, however, that several cars in the outside lane had stopped to let him turn, that he "made sure there was no traffic coming," pulled up completely into the median, and was waiting to complete the turn for "30 seconds to a minute" when Kucharski swerved into the median and hit him. Id. at 223.

The jury found Kucharski 60% at fault and Leroy 40% at fault. On November 27, 2006, Kucharski filed a motion to correct error alleging that the jury's verdict was

against the weight of the evidence. After a hearing, the trial court granted the motion and ordered a new trial, entering the following findings of fact and conclusions thereon:

1. Defendant, Shon Leroy; although testifying at trial that his vehicle was struck in the median after he had safety [sic] crossed two lanes of southbound traffic on Lima Road, told the investigating officer at the scene of the accident, that a vehicle had stopped in the southbound lane of Lima Road closest to Graham Drive and had waived him across the intersection, and that as he entered the second lane of traffic (the inside southbound lane where ... Kucharski was traveling) the collision occurred.

2. [Kucharski] testified that as [Leroy] attempted to cross the two southbound lanes of traffic on Lima Road, she struck [Leroy's] vehicle despite attempting to brake and avoid the collision.

3. The investigating officer also testified that [Leroy] told him that he never saw [Kucharski's] vehicle as he attempted to cross the two lanes of southbound Lima Road.

4. The investigating officer hand-drew a diagram of the collision scene wherein he located the collision impact in the middle of [Kucharski's] southbound lane of traffic rather than in the median. The officer's diagram was based upon his own investigation of the collision, which included speaking to both drivers and examining the location of the vehicles and the accident debris.

5. [Leroy] also testified at trial that a line of traffic had stopped to let him pass over the outside lane of southbound traffic on Lima Road; whereas he told the investigating officer only one car had stopped.

6. The conflict between the testimony of [Leroy] at trial and at the scene of the accident as to the point of impact is resolved by this Court by rejecting [Leroy's] trial testimony and finding his statements made to the investigating officer more probative.

7. In light of all the evidence presented at trial, this Court finds that the point of impact of the collision was in the middle of the inside southbound lane of traffic on Lima Road where [Kucharski] was traveling.

8. That [Kucharski's] characterization of the collision as a "T-bone" type collision, which may not be totally accurate, is not a material fact.

9. The collision occurred in [Kucharski's] through lane of traffic.

10. [Leroy] failed to see [Kucharski's] vehicle when he was waived across the highway by an unknown motorist.

11. The damages to [Leroy's] vehicle was [sic] on the left rear quarter panel, where it was struck by the front of [Kucharski's] vehicle.

12. [Kucharski] attempted to brake and avoid the collision.

13. *There was no evidence of the speed of either vehicle immediately prior to the collision.*

14. That [Kucharski's] speculation as to how or why the jury reached its verdict is merely that, speculation, and not at all determinative to this Court's ruling herein.

This Court makes the following conclusions of law:

1. That [Kucharski] proved by a preponderance of the evidence that [Leroy] failed to yield the right of way

to [Kucharski], and that, therefore, [Leroy] was negligent.

2. That no specific negligence on the part of [Kucharski] was alleged by [Leroy] in the Pre–Trial Order.

3. That [Leroy] failed to prove by a preponderance of the evidence that [Kucharski] was negligent.

4. That [Kucharski] proved by a preponderance of the evidence that the collision was proximately caused by the negligence of [Leroy].

5. That based on the above findings of fact, the verdict of the jury allocating 60% fault to [Kucharski] and 40% fault to [Leroy] is against the weight of the evidence presented at trial.

6. In weighing the evidence presented, this Court finds that a contrary verdict should have been reached.

WHEREFORE, this Court acting as a "thirteenth juror" (in this case, more accurately as an "eight juror") as authorized under Indiana law, now finds that the verdict of the jury should be set aside and, therefore, **GRANTS** [Kucharski's] Motion to Correct Errors and orders a new trial in this case.

\*     \*     \*     \*     \*     \*

Appellant's Appendix at 61–63 (emphasis added).

■ The sole issue is whether the trial court abused its discretion when it ordered a new trial. As Leroy correctly notes, contrary to the trial court's finding that there was no evidence of the speed of either vehicle prior to the collision, the parties presented evidence at trial that Kucharski was traveling 40 to 45 miles per hour before the collision and that she was traveling 30 to 35 miles per hour, or, alternatively, 45 miles per hour, at the moment of impact. Leroy argues that the trial court's erroneous finding constitutes a fail-

ure to comply with Ind. Trial Rule 59(J), which, he contends, requires that the trial court "set forth supporting and opposing evidence *on each issue.*" Appellant's Brief at 10. We disagree.

■ "A trial court has wide discretion to correct errors and to grant new trials." *DeVittorio v. Werker Bros.*, 634 N.E.2d 528, 530 (Ind.Ct.App.1994) (citing *Malacina v. Malacina*, 616 N.E.2d 1061, 1062 (Ind.Ct.App.1993)). In determining whether to grant a new trial, "the trial judge has an affirmative duty to weigh conflicting evidence." *Precision Screen Machs., Inc. v. Hixson*, 711 N.E.2d 68, 70 (Ind.Ct.App.1999) (quoting *Memorial Hospital of South Bend, Inc. v. Scott*, 261 Ind. 27, 33, 300 N.E.2d 50, 54 (1973)). "The trial judge sits as a thirteenth juror and must determine whether in the minds of reasonable men a contrary verdict should have been reached." *Id.* (quoting *Scott*, 261 Ind. at 33, 300 N.E.2d at 54).

■ When a trial court grants a new trial pursuant to Trial Rule 59(J), the granting of relief is given a strong presumption of correctness. *DeVittorio*, 634 N.E.2d at 530 (citing *Lucero v. Lutheran Univ. Ass'n*, 621 N.E.2d 660, 662 (Ind.Ct.App.1993)). We will reverse the grant of a new trial only for an abuse of discretion. *Id.* This court neither weighs the evidence nor judges the credibility of the witnesses. *Hixson*, 711 N.E.2d at 70. An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. *DeVittorio*, 634 N.E.2d at 530. An abuse of discretion also results from a trial court's decision that is without reason or is based upon impermissible reasons or considerations. *Id.*

■ Trial Rule 59(J) provides in relevant part:

The court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error, including without limitation the following with respect to all or some of the parties and all or some of the errors:

(1) Grant a new trial;

\* \* \* \* \* \*

(7) In reviewing the evidence, *the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence;* and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence.

In its order correcting error the court shall direct final judgment to be entered or shall correct the error without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. If corrective relief is granted, the court shall specify the general reasons therefor. *When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted.* Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; *if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted;* if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence.

Ind. Trial Rule 59(J) (emphasis added). Thus, if the court, sitting in its role as a "thirteenth juror" in reviewing the evidence, orders a new trial because the verdict is against the weight of the evidence, the court "shall relate the supporting and opposing evidence to each issue upon which the new trial is granted." *Weida v. Kegarise,* 849 N.E.2d 1147, 1152 (Ind.2006) (quoting Ind. Trial Rule 59(J)). When a court orders a new trial because the verdict is "against the weight of evidence" but fails to make the required special findings, the proper remedy is reinstatement of the jury verdict. *Id.*

The procedural requirements enumerated in Trial Rule 59(J) and the process of making the requisite special findings have been characterized as "arduous and time-consuming." *DeVittorio,* 634 N.E.2d at 531 (quoting *State v. McKenzie,* 576 N.E.2d 1258, 1260 (Ind.Ct.App.1991), *reh'g denied, trans. denied* ). However, the purpose of those requirements is to provide the parties and the reviewing court with the theory of the trial court's decision. *Id.* (citing *Malacina,* 616 N.E.2d at 1063). The findings may summarize the evidence provided that the summary is complete enough to facilitate appellate review. *Id.* (citing *Malacina,* 616 N.E.2d at 1063).

At trial, the parties disputed whether Leroy's car was in Kucharski's lane at the moment of impact, where Kucharski had the right of way, or in the median, where Kucharski had to swerve to hit him. Ac-

cording to Officer Barbour, Leroy claimed at the scene of the accident that one car stopped to let him turn and that he "pulled out and did not see [Kucharski] and got hit." Transcript at 44–45. Officer Barbour prepared a diagram of the collision locating it in Kucharski's lane. Leroy testified, however, that several cars in the outside lane had stopped to let him turn, that he "made sure there was no traffic coming," pulled up completely into the median, and was waiting to complete the turn for "30 seconds to a minute" when Kucharski swerved into the median and hit him. *Id.* at 223. During closing arguments, in support of his testimony, Leroy argued that photographs of the cars taken after the collision revealed that Kucharski did not hit him "flush" or "square," but rather, at an angle. *Id.* at 327.

Despite the jury's finding that Kucharski was 60% at fault, the trial court resolved the factual dispute between the parties by finding Leroy's statements to Officer Barbour at the scene of the accident to be "more probative." Appellant's Appendix at 61. Because Leroy argued no other basis for the conclusion that Kucharski drove her car negligently, the trial court found the jury's verdict to be against the weight of the evidence and granted a new trial. It made special findings on the conflicting evidence regarding the location of Leroy's car at the moment of impact and the number of cars that had stopped to let him turn.

Although the trial court's finding that there was no evidence regarding Kucharski's speed was in error, Leroy did not argue at trial that Kucharski's speed was evidence of negligence. Because the evidence reveals that Kucharski was traveling at or under the speed limit, and that she attempted to break and avoid the collision, the trial court's error was of no consequence to its decision to grant a new trial.[1] Accordingly, we conclude that the trial court entered the special findings as required by Ind. Trial Rule 59(J), and we cannot say that the trial court abused its discretion when it ordered a new trial.[2]

For the foregoing reasons, we affirm the trial court's grant of a new trial.

Affirmed.

RILEY, J., and FRIEDLANDER, J., concur.

<hr />

1. Leroy argues that the "speed of the vehicles may very well have been crucial to the determination of the jury," that Kucharski's "failure to slow down" was a superseding cause of the accident, and that the trial court's findings "fail to account for the real possibility that the jury could have arrived at their verdict even if the accident occurred in Kucharski's lane of travel." Appellant's Brief at 9–10. The trial court was well within its discretion to find the jury's verdict to be against the weight of the evidence, a finding that requires some assessment of the credibility of witnesses. However, on appeal, we cannot reweigh the evidence or judge the credibility of witnesses. *See Hixson,* 711 N.E.2d at 70.

2. Leroy cites *Weida v. Kegarise,* 849 N.E.2d 1147, 1152 (Ind.2006), for the proposition that the proper remedy when the trial court has made "insufficient special findings" is reinstatement of the jury verdict. Appellant's Brief at 13. The present case is distinguishable from *Weida,* because in that case, after ordering a new trial, the trial court failed to make any special findings at all. 849 N.E.2d at 1152.