**INGERSOLL–RAND CORP. and State Equipment Company, Inc., Appellants (Defendants Below),**

v.

**Kenneth L. SCOTT and Janet Scott, Appellees (Plaintiffs Below).**

No. 12A02–8807–CV–264.

Court of Appeals of Indiana, Second District.

July 31, 1990.

C. Dickson Faires, Jr. and Frederick D. Emhardt, Miller, Faires, Hebert Woddell & Baker, P.C., Indianapolis, for appellant Ingersoll–Rand Corp.

James D. Witchger and William T. Graden, Rocap, Witchger & Threlkeld, Indianapolis, for appellant State Equipment Co., Inc.

Jerome L. Withered and Loretta H. Rush, Reiling Teder & Withered, Lafayette, for appellees.

SULLIVAN, Judge.

Ingersoll–Rand Corp. (Ingersoll) and State Equipment Company, Inc. (State) appeal a $250,000 judgment entered upon a jury verdict. Plaintiffs Kenneth L. Scott and Janet Scott (Scott) filed suit for injuries to Kenneth Scott occasioned by a defective product. Scott, an Indiana State Highway Department employee, injured his back on January 3, 1983, when the wheel assembly associated with a trailer-mounted air compressor malfunctioned.

Ingersoll and State seek reversal of the judgment upon grounds that:

(1) There was insufficient medical testimony to establish proximate cause of Scott's permanent disability;

(2) Scott failed to carry the burden of proving that it was not possible to isolate the particular injury sustained during the incident in question from a pre-existing back condition, from another unrelated incident occurring on the same day, and from an incident occurring some three months later; and

(3) The trial court erred in not acting as a thirteenth juror so as to set aside the verdict and judgment.

Because Scott claimed total disability as a result of the injury to his back, it is necessary to recite that Scott had a long history of lower back pain and injury prior to the air compressor incident of January 3, 1983. On that same date, later in the day, Scott attempted to lift a heavy jack hammer from a tool box on the same air compressor and suffered immobilizing pain.

The jack hammer apparently struck Scott in the groin area when he fell backward. He was then taken to a hospital. Subsequently, in June of 1983, Scott reinjured the back while unloading a pickup truck.

In May 1984 surgery was performed for a herniated or ruptured disc. As noted, his lawsuit claimed damages for permanent disability.

I

■ Ingersoll and State contend that medical evidence is essential to establish proximate cause and that the medical testimony here failed to do so.[1] The argument focuses upon the fact that one of Scott's medical witnesses had no opinion as to proximate cause and the other testified in terms of mere possibility as opposed to probability or reasonable medical certainty. *See Noblesville Casting Division of TRW, Inc. v. Prince* (1982) Ind., 438 N.E.2d 722; *Palace Bar, Inc. v. Fearnot* (1978) 269 Ind. 405, 381 N.E.2d 858; *Watson v. Medical Emergency Services Corp.* (1989) 2d Dist. Ind.App., 532 N.E.2d 1191, *trans. denied.*

■ An emphasis upon the standard used to evaluate medical testimony is appropriate when such evidence is the only evidence to establish proximate cause. Where however there is other independent evidence from which a reasonable trier of fact may find the causal link, medical testimony which is not couched in terms of certainty or strong probability is not fatal to a plaintiff's verdict.

The cases relied upon by Scott stand for the proposition that medical testimony in terms of mere possibility will not, standing alone, support a verdict. Here, however, as in *Noblesville Casting, supra,* 438 N.E.2d 722, there was independent evidence which related to causation. The evidence here as to the occurrence itself gives rise to a permissible conclusion of proximate cause.[2]

*La Porte Transit, Inc.* (1979) 3d Dist.Ind.App., 397 N.E.2d 656.

---

**1.** Scott couches his argument in terms of the sufficiency of evidence to prove "the" proximate cause. It is well established that the act complained of need not be the sole proximate cause. If a defendant's conduct is *a* proximate cause, he shall be liable for the injury. *Koroniotis v.*

**2.** It must be noted that the jury here was fully and correctly instructed as to the issue of proximate causation. The instruction defining proxi-

■ As Scott was rolling the air compressor to the truck, the wheel assembly flew up underneath the tongue of the trailer and the air compressor went down with Scott holding on, jerking him to the ground. The weight on the front of the tongue was approximately 100 pounds. Scott immediately heard something pop in his back. After the accident, he lay on the ground; his back was numb, and his legs and feet were hot and had no feeling.

When his foreman arrived, Scott was lying on the ground next to the air compressor. Scott said he was numb and had no feeling from the waist down. The men had to pick him up and take him to a picnic table.

The evidence as to proximate causation was adequate to support a plaintiff's verdict and judgment. Our determination in this regard makes it unnecessary to discuss Ingersoll's and State's contention that the court erred in failing to grant judgment on the evidence at the conclusion of all the evidence.

## II

In arguing that Scott did not prove that it was impossible to apportion his injuries among and between the pre-existing condition, the air compressor incident, the jack hammer incident and the pickup truck unloading occurrence, he is essentially claiming that the damages awarded are excessive.[3] He relies upon *Dunn v. Cadiente* (1987) Ind., 516 N.E.2d 52.

In that case, our Supreme Court acknowledged the principle advanced by Deans Prosser and Keeton that a defendant's liability may be limited to that part of the harm which he has in fact caused if a logical basis may be found for an apportionment. In doing so, however, the court seemed to place upon plaintiff the burden to prove a negative, i.e., "the *absence* of a basis for apportionment of damages." Medical Malpractice, 22 Ind.L.Rev. 535, 543

(1989 Survey Ed.). We note, however, that in *Dunn*, the plaintiff was seeking to obtain a greater amount than was awarded in damages. He was essentially claiming that the jury improperly apportioned his damages between a pre-existing condition and an act of medical malpractice. Our Supreme Court merely held that the apportionment was appropriate under the evidence. In the case before us, the reverse side of the coin is presented. Ingersoll and State are seeking to avoid a damage award for the entire injury. They argue, in effect, that such damages are not proper unless the plaintiff proves the negative. We do not believe that the *Dunn* case requires us to so hold. *See Prosser & Keeton on Torts* 350, n. 50 (5th Ed.1984).

■ In any event, a well established proposition prevents Ingersoll and State from succeeding upon this issue. Whether or not the evidence here is susceptible to an apportionment, neither Ingersoll nor State tendered an instruction which would inform the jury of the right or duty to make an apportionment or with respect to the burden of proof on the matter. Accordingly, they may not now claim that the jury verdict and judgment thereon erroneously failed to apportion the damages. *Picadilly, Inc. v. Colvin* (1988) Ind., 519 N.E.2d 1217.

■ We note that Ingersoll and State "are not complaining that the trial court failed to properly instruct the jury." Appellant's Reply Brief at 21. We hold that the damage award was within the contemplation of the instructions given and is therefore insulated from attack. The jury was specifically advised that only those elements of damage proximately caused by the wrongful conduct of the defendants were recoverable. Furthermore, the following instruction given by the court justifies the non-apportioned verdict:

mate cause as given by the Court was tendered by Ingersoll. Record at 675.

**3.** Our conclusion in this regard is stated notwithstanding that Ingersoll and State contend

that because Scott failed to establish the absence of a basis for apportionment, he is entitled to no damages at all.

**"FINAL INSTRUCTION NO. 15**

If you find from the evidence that the plaintiffs are entitled to recover damages, the defendants are legally responsible for all injuries suffered by the plaintiffs as a proximate result of the defendants' conduct. The law provides that a wrongdoer takes a plaintiff as he finds him, with all of his illnesses and infirmities of body, and the defendant may be held responsible in damages for aggravating a previous physical condition. Even if you find from the evidence that because of a prior physical condition, the plaintiff may have been susceptible to injury, or that he suffered more because of a prior physical condition, this fact will not prevent the recovery of any and all damages proximately caused by the defendants' conduct." Record at 713.

Even if we were to find merit in defendants' argument concerning the burden of proving impossibility of apportionment, we would reject their position that Scott's failure to carry the burden precludes an award of any damages at all. The evidence is without dispute that the air compressor incident caused some pain and numbness. At a minimum, under such circumstances, nominal damages are proper. *American Fletcher National Bank & Trust Co. v. Flick* (1969) 146 Ind.App. 122, 252 N.E.2d 839; *Cox v. Winklepleck* (1971) 149 Ind. App. 319, 271 N.E.2d 737.

For the foregoing reasons, Ingersoll and State have failed to demonstrate reversible error with respect to apportionment of damages.

### III

In denying the Motion to Correct Errors, the trial judge stated:

"While the Court declines to state whether or not the jury verdict was the same as would have been reached in a bench trial, it cannot find that the jury decision

was impractical, unfair, or improper." Record at 751.

Ingersoll and State maintain that such statement triggered a mandatory duty on the part of the trial judge to act as a Thirteenth Juror, to set aside the verdict and judgment and at a minimum to order a new trial pursuant to Trial Rule 50(C).[4]

■ To be sure, when a trial court has granted a new trial pursuant to Trial Rule 59(J) or Trial Rule 50(C), the granting of that relief is afforded a *"strong* presumption of correctness." *Huff v. Travelers Indemnity Co.* (1977) 266 Ind. 414, 363 N.E.2d 985, 994. Decisions from this court which have reviewed the granting of new trials have been consistent in honoring that "strong presumption." They apply a standard of review which requires affirmance of the new trial relief granted unless there has been an abuse of discretion. *See e.g., City of Michigan City v. Washington Park Amusement Corp.* (1979) 3d Dist., 179 Ind.App. 74, 384 N.E.2d 1063.

In *Berg v. Glinos* (1989) 4th Dist.Ind. App., 538 N.E.2d 979, and in *Bossard v. McCue* (1981) 3d Dist.Ind.App., 425 N.E.2d 682, jury verdicts for the defendant were set aside and new trials ordered. In both cases this court applied an abuse of discretion standard of review and observed that even if the evidence conflicts, so long as it preponderates in favor of the losing party, the court may properly grant a new trial.

These cases and others like them do not stand for the proposition that a trial court commits reversible error if it *denies* a new trial where the evidence is conflicting. To so decide would be to hold that a verdict may be upheld only if the evidence is undisputed and when a trial court would have been compelled to direct a verdict for the winning party. A verdict could never withstand a Trial Rule 50 or 59(J) attack where the evidence is conflicting but where reasonable minds might differ as to the result. We are unwilling to state that case prece-

4. Trial Rule 50(C) reads as follows:

"(C) **New Trial in Lieu of Judgment on the Evidence.** When a judgment on the evidence is sought before or after the jury is discharged, the court may grant a new trial as to

part or all of the issues in lieu of a judgment on the evidence when entry of a judgment is impracticable or unfair to any of the parties or otherwise is improper, whether requested or not."

dent in Indiana, beginning with *Bailey v. Kain* (1963) 135 Ind.App. 657, 192 N.E.2d 486, and continuing through *Berg v. Glinos, supra,* requires us to reverse the trial court and to order a new trial. Were we to do so and the same or similar evidence were adduced, the litigation might never end. After a verdict for either party following a new trial, the trial court would be compelled to view the conflicting evidence and to grant relief to the losing party.

■ Mere conflicts or inconsistencies in testimony favoring the verdict do not give rise to mandatory operation of the Thirteenth Juror principle. The doctrine is not intended to invite the trial judge to cavalierly substitute his evaluation of the evidence in place of a contrary evaluation made by the jury. The relief is appropriate only if the jury's determination is unreasonable or improper.

■ Certainly, when the trial court has declined to intervene and has refused to set aside the verdict, an appellate tribunal is not permitted to do so unless the verdict is wholly unwarranted under the law and the evidence.

■ As stated in Part I hereof, the evidence was sufficient to support the verdict and judgment. It was not, therefore, inappropriate for the trial court to decline the invitation to set that verdict and judgment aside and to grant a new trial.

The judgment is affirmed.

SHIELDS, P.J., and HOFFMAN, J., concur.