STATE of Indiana, Appellant–Plaintiff,

v.

Shannon HOLLARS, Appellee–
Defendant.

No. 12A02–0711–CR–979.

Court of Appeals of Indiana.

June 3, 2008.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Bradley K. Mohler, Ponton & Mohler, Frankfort, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, the State of Indiana (State), appeals the trial court's grant of Appellee–Defendant Shannon Hollars' (Hollars) motion to correct error and a new trial following Hollars' conviction for attempted murder, a Class A felony, Ind. Code §§ 35–42–1–1 and 35–41–5–1.

We reverse.

### ISSUE

The State presents a single issue for our review, which we restate as: Whether the trial court abused its discretion by granting Hollars' motion to correct error.

## FACTS AND PROCEDURAL HISTORY[1]

In December of 2004, officers with the Frankfort (Indiana) Police Department orchestrated three marijuana transactions between an informant and Hollars. Upon learning that Hollars was expected to arrive home at midnight on December 15, 2004, the officers elected to execute a search warrant at the home at that time. Officers believed that executing the search warrant late at night was the safest plan because, among other things, it would minimize the number of innocent bystanders and reduce the risk that Hollars would flee. In addition, for several reasons, Detective William Hackerd (Detective Hackerd) requested the support of the Emergency Response Team (ERT). First, the informant had said that Hollars kept guns at a previous residence. Also, Detective Hackerd knew from experience that drug dealers have guns. Finally, during one of the marijuana transactions, Hollars said that "a lot of people are getting popped." (Transcript p. 109).

The ERT approached Hollars' house at approximately 1:00 a.m. on December 16, 2004. An officer knocked on the outer door and announced the police presence in a loud voice. No response was heard. An officer then broke the glass in the outer door and reached in to unlock the door. The officers then proceeded through the enclosed front porch to a steel door and again knocked and issued "several loud announcements" of "police, search warrant." (Tr. p. 343). Still hearing no response, the officers used a "heavy ram" to open the door. (Tr. p. 246). A shielding officer entered the home first with Marshal Byron Padgett (Marshal Padgett) behind him. The officers continued to yell "police, search warrant" as they entered the living room. (Tr. p. 248).

As the officers moved through the living room, Marshal Padgett saw Hollars and his wife on a bed in a bedroom and yelled "suspect." (Tr. p. 345). Marshal Padget moved toward the couple yelling "police, let me see your hands." (Tr. p. 346). Hollars then started "to come out of the bed," and Marshal Padgett saw "a very deliberate motion of him drawing a weapon and pointing it at me." (Tr. p. 346). Marshal Padgett then saw a muzzle flash and feared he was about to be shot, so he returned fire, as did another officer. Marshal Padgett was not wounded, but Hollars was hit in the right arm. The officers took Hollars into custody. According to the officers, no more than five seconds passed from the time that the ERT entered the living room to the time that Hollars fired his gun.

On December 29, 2004, the State filed an Information charging Hollars with: Count I, attempted murder, a Class A felony, I.C. §§ 35–42–1–1 and 35–41–5–1; Count II, dealing marijuana, as a Class D felony, I.C. § 35–48–4–10; Count III, dealing marijuana, as a Class A misdemeanor, I.C. § 35–48–4–10; Count IV, dealing marijuana, as a Class D felony, I.C. § 35–48–4–10; and Count V, possession of marijuana, as a Class D felony, I.C. § 35–48–4–11.[2] A jury trial began on March 20, 2007. After all of the evidence was presented, Hollars tendered the following jury instruction (Hollars' Proposed Instruction # 2) regarding the attempted murder charge:

---

1. We notice that nine of the sixteen items included in Hollars' Appellee's Appendix are also included in the State's Appellant's Appendix. Indiana Appellate Rule 50(B)(2) clearly states that "the appellee's Appendix shall not contain any materials already contained in appellant's Appendix." We ask Hollars' counsel to follow this rule in the future.

2. The State later added a count of resisting law enforcement but dismissed it before trial.

"Specific intent for attempted murder is intent to achieve death, rather than intent to engage in conduct which carries with it a risk of death." (Appellant's App. p. 40). The trial court declined to give the jury the instruction. The jury found Hollars guilty on all counts.

On May 2, 2007, two days before his sentencing hearing, Hollars filed a motion to correct error. Hollars alleged that the State had failed to produce an E.R. physician's diagram during discovery. The diagram in question identifies entry and exit wounds to Hollars' arm caused by the gunfire from Marshall Padgett. According to Hollars, the diagram would have been favorable to him "because it is either exculpatory or impeaching, i.e. would have provided additional information and/or testimony to validate [Hollars'] claim that he was shot first and/or shot through the back of his arm and/or would have impeached testimony from the State's witnesses[.]" (Appellant's App. p. 98).

On May 4, 2007, the trial court proceeded with the sentencing hearing. The trial court made the following comments regarding Hollars' specific intent to kill:

> The trial may have taken four days to hear and conclude but the operative facts in this case concerning Attempted Murder and that charge boiled down to three to five seconds and about eight foot of distance. An extremely short distance. And extremely short period of time. Which brings up specific intent versus reaction. [C]an an individual form a specific intent to kill [ ] another human being in that amount of time in this situation?
>
> * * * *
>
> [T]he facts of this case have troubled me deeply. Less than five seconds in the middle of the night. How clear headed are any of us when we're awaken from

slumber? How clearly does a person hear words being shouted. I'm confident [the ERT] tries to make words clear. But how well do we process words waking up?

> * * * *
>
> Was this [ ] reckless reaction, a knee jerk reaction or an intent to kill another person?
>
> * * * *
>
> Having heard the evidence, I can honestly admit, I've never had a closer issue to ponder with regard to these requirements of specific intent and whether that was (inaudible). I even talked with counsel a few days ago. And alerted them to my concern. But in the end an honorable jury has listened. They pondered. And they reached their verdict. This Court will honor their verdicts and sentence [Hollars] accordingly.

(Transcript pp. 882, 887–88). The trial court imposed a cumulative sentence of twenty-two years. It added, however, that it would "consider the final adjudication to be the date when the ruling is on the Motion to Correct Errors that is pending." (Tr. p. 888).

Sure enough, on August 23, 2007, the trial court issued an order granting Hollars' motion to correct error. Based on Hollars' motion and its own *sua sponte* review of the case, the trial court granted relief for three reasons. First, it concluded that it should have given Hollars' Proposed Instruction # 2 regarding specific intent. Second, it found that the State should have provided Hollars with the E.R. physician's diagram, even though Hollars "could have otherwise secured this document." (Appellant's App. p. 161). Third, it noted the late hour at which the police entered Hollars' house and the ben-

efits of the so-called "Knock–and–Announce requirement." (Appellant's App. p. 162). The trial court conceded that "[n]o one issue would necessarily warrant [Hollars] being provided a new trial[.]" (Appellant's App. p. 161). But, the trial court continued, "At the end of the day, however, the citizens of Clinton County must have confidence that [Hollars] was provided the Due Process to which each citizen is entitled, and that [Hollars] received a fair trial[.]" (Appellant's App. p. 161). The trial court found "cumulatively that [Hollars] should be granted a new trial[.]" (Appellant's App. p. 162). The trial court vacated Hollars' attempted murder conviction and granted him a new trial on that charge.[3]

The State now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

On appeal, the State contends that the trial court abused its discretion by granting Hollars' motion to correct error. The decision to grant or deny a motion to correct error is within the trial court's discretion, and we reverse such a decision only for an abuse of that discretion. *Moore v. State*, 869 N.E.2d 489, 491 (Ind. Ct.App.2007). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law. *Id.*

The trial court granted Hollars' motion to correct error after finding that he was deprived of due process by the cumulative effect of three perceived errors: (1) jury instructions; (2) discovery violation; and (3) timing of the execution of the search warrant. We address each factor in turn.

3. The trial court did not vacate Hollars' marijuana convictions, and Hollars does not challenge those convictions in this appeal.

### I. *Jury Instructions*

■ The State argues that the trial court erroneously concluded that it should have given Hollars' Proposed Instruction # 2, which provided: "Specific intent for attempted murder is intent to achieve death, rather than intent to engage in conduct which carries with it a risk of death." (Appellant's App. p. 40). Hollars seeks to justify the trial court's *sua sponte* finding by asserting that the failure to give the instruction was fundamental error under *Spradlin v. State*, 569 N.E.2d 948 (Ind. 1991). We disagree.

In *Spradlin*, our supreme court simply held that an attempted murder instruction must inform the jury that the defendant acted "with intent to kill the victim." *Id.* at 949. Here, as the State contends, the trial court's Final Instruction # 2 did just that. It provided:

The crime of Attempted Murder is defined by statute as follows:

A person attempts to commit a murder when, acting with the specific intent to kill another person, he engages in conduct that constitutes a substantial step toward killing that person.

To convict [Hollars] of Attempted Murder, the State must have proved each of the following elements:

1. [Hollars]

2. Acting with the specific intent to kill [Marshal] Padgett

3. Did shoot a gun at [Marshal] Padgett

4. Which was conduct constituting a substantial step toward the commission of the intended crime of killing [Marshal] Padgett.

(Appellant's App. p. 72). This instruction *twice* informs the jury that Hollars must have acted with the specific intent of killing Marshal Padgett and does not mention any other *mens rea.* Actually, the instruction appears to have been modeled after Indiana Pattern Jury Instruction 2.01(a), regarding attempted murder, which was written in light of *Spradlin.* Thus, Hollars' Proposed Instruction #2 was not necessary to satisfy the requirements of *Spradlin.* As for Hollars' contention that his Proposed Instruction #2 "more fully defined the specific intent that is so critical as described in *Spradlin,*" we simply note that Hollars cites no authority that requires a more full definition of "specific intent." (Appellee's Br. p. 10).

Still, Hollars emphasizes that his Proposed Instruction #2 "is listed in the Commentary to the Indiana Pattern Jury Instructions, 1995 Supplement, and is based upon language in *Simmons v. State,* 642 N.E.2d 511 (Ind.1994)." (Appellee's Br. p. 9). We make several observations. First, while the proposed instruction was suggested by the Indiana Judges Association's Criminal Instructions Committee in the Comments to the pattern jury instruction on attempt for use in certain circumstances, it was not itself a formal pattern jury instruction. *See* Comments, Ind. Pattern Jury Instructions 2.01 (1991 & 1995 Supp.). Second, to say that the proposed instruction is "based on" *Simmons* is somewhat misleading. Unlike the proposed instruction, the words "achieve," "risk," and "death" do not even appear in the *Simmons* opinion. *See Simmons,* 642 N.E.2d 511. Third, and most importantly, the Committee has since created an "Attempted Murder" pattern jury instruction separate from the general "Attempt" pattern jury instruction, and it chose to remove the language of Hollars' Proposed Instruction #2 and the references to *Simmons* from the Comments. *See* Com-

ments, Ind. Pattern Jury Instruction 2.01(a) (2007). Hollars' reliance on the Indiana Pattern Jury Instructions as they existed in 1995 is misplaced, and, as we noted above, the trial court instructed the jury in accordance with the pattern instructions as they currently exist.

The trial court's instructions satisfied the requirement of *Spradlin,* and its failure to give Hollars' Proposed Instruction #2 does not justify reversal of Hollars' attempted murder conviction.

## II. *Discovery Violation*

 The State next argues that its failure to produce the E.R. physician's diagram during discovery does not warrant a new trial. Under the United States Supreme Court's opinion in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or the bad faith of the prosecution." To establish a *Brady* violation, a defendant must show: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial. *Stephenson v. State,* 864 N.E.2d 1022, 1056–57 (Ind.2007), *reh'g denied, cert. denied,* —— U.S. ——, 128 S.Ct. 1871, 170 L.Ed.2d 751 (2008). Importantly, as our supreme court stated in *Stephenson,* "the State will not be found to have suppressed material information if that information was available to a defendant through the exercise of reasonable diligence." *Id.* at 1057 (quoting *Conner v. State,* 711 N.E.2d 1238, 1246 (Ind.1999), *reh'g denied, cert. denied,* 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000)).

Even if we assume, *arguendo,* that the E.R. physician's diagram, which purports

to display Hollars' entry and exit wounds, was favorable to the defense and material to an issue at trial (the State contests both of these points), the fact remains that Hollars could have obtained the document through the exercise of reasonable diligence. As the trial court itself acknowledged, the E.R. physician's diagram "was part of [Hollars'] very own medical records and therefore available and accessible to him at any time." (Appellant's App. p. 161). As such, the trial court stated, "*Stephenson* would seemingly preclude relief." (Appellant's App. p. 161). The trial court added, "A pertinent document was inadvertently not provided by the State in its discovery to [Hollars], *although [Hollars] could have otherwise secured this document.*" (Appellant's App. p. 161) (emphasis added). On appeal, Hollars makes no response whatsoever to the State's assertion that his access to the document was equal to or greater than that of the State, which actually had to subpoena it. We conclude that the State's inadvertent suppression of the E.R. physician's diagram was not cause for a new trial on the attempted murder charge.

### III. *Execution of the Search Warrant*

We now turn to the trial court's third reason, also offered *sua sponte,* for granting Hollars' motion to correct error: the late hour at which the police entered Hollars' house and the benefits of the so-called "Knock–and–Announce requirement." More specifically, the trial court stated in its order:

> A search warrant for marijuana was executed by [the ERT] past midnight, after the household was asleep. Less than 8′ from the bedroom entry, the officer observed [Hollars] and his wife awaken ("coming up in the bed" per [Marshal] Padgett), followed by a miniscule lapse of time (several seconds) until [Hollars] discharged his gun one time.

*Hudson v. Michigan* 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), starting at 2165 citing many prior cases, delineates various interests that Knock–and–Announce requirements are intended to protect. They provide residents "the opportunity to comply with the law." "The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed." A Knock–and–Announce requirement "protects those elements of privacy and dignity that can be destroyed by a sudden entrance."

(Appellant's App. p. 162). It is not clear from this excerpt what the trial court's legal basis was for reversing Hollars' attempted murder conviction. However, Hollars asserts on appeal that the trial court exercised its authority as the "thirteenth juror" under Indiana Trial Rule 59 and concluded that Hollars could not have formulated the specific intent to kill in light of the timing and manner of the execution of the search warrant. The trial court's comments at Hollars' sentencing hearing support such a reading. Specifically, the trial court said that it had "never had a closer issue to ponder with regard to these requirements of specific intent" and that it would "consider the final adjudication to be the date when the ruling is on the Motion to Correct Errors that is pending." (Tr. pp. 887–88). Therefore, we proceed with our "thirteenth juror" analysis.

In reviewing the evidence pursuant to a motion to correct error, a trial court "shall grant a new trial if it determines that the verdict . . . is against the weight of the evidence[.]" Ind. Trial Rule 59(J)(7). As we recently explained:

> A trial court has wide discretion to correct errors and to grant new trials. In determining whether to grant a new tri-

al, the trial judge has an affirmative duty to weigh conflicting evidence. The trial judge sits as a thirteenth juror and must determine whether in the minds of reasonable men a contrary verdict should have been reached. When a trial court grants a new trial pursuant to Trial Rule 59(J), the granting of relief is given a strong presumption of correctness. We will reverse the grant of a new trial only for an abuse of discretion. This court neither weighs the evidence nor judges the credibility of the witnesses. An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. An abuse of discretion also results from a trial court's decision that is without reason or is based upon impermissible reasons or considerations.

*Leroy v. Kucharski*, 878 N.E.2d 247, 250 (Ind.Ct.App.2007), *trans. denied.* As the thirteenth juror, the trial court: (1) hears the case along with the jury; (2) assesses the credibility, intelligence, and wisdom of the witnesses; and (3) determines whether the verdict is against the great weight of the evidence. *State v. Taylor*, 863 N.E.2d 917, 920 (Ind.Ct.App.2007). However, the "thirteenth juror" principle is not intended to invite the trial judge to cavalierly substitute his or her evaluation of the evidence in place of a contrary evaluation made by the jury, and relief is appropriate only if the jury's determination is unreasonable or improper. *Ingersoll–Rand Corp. v. Scott*, 557 N.E.2d 679, 684 (Ind.Ct.App.1990), *trans. denied.*

As an initial matter, we note that the trial court did not enter any special findings supporting the exercise of its authority as the "thirteenth juror." When a trial judge reweighs the evidence and substitutes his or her judgment for that of the jury under Indiana Trial Rule 59(J), the rule mandates special findings that "relate the supporting and opposing evidence to each issue upon which a new trial is granted." *Chi Yun Ho v. Frye*, 880 N.E.2d 1192, 1196 (Ind.2008) (quoting Ind. T.R. 59(J)). The purpose of such findings is to provide the parties and the reviewing court with the theory of the trial court's decision. *Leroy*, 878 N.E.2d at 251. Generally, when a trial court orders a new trial because the verdict is against the weight of the evidence but fails to make the required special findings, the proper remedy is reinstatement of the jury verdict. *Chi Yun Ho*, 880 N.E.2d at 1196. Here, however, the State did not ask for this remedy. As such, we will address the propriety of the trial court's decision without the findings. Nonetheless, we stress that the "strong presumption of correctness" does not apply where the trial court fails to make such findings. *See Weida v. Kegarise*, 849 N.E.2d 1147, 1154 (Ind.2006).

During the sentencing hearing in this case, the trial court questioned whether an individual can form the specific intent to kill within three to five seconds after being awakened in the middle of the night. The short answer is yes. That Hollars was able to form the necessary intent to kill may be inferred from his intentional use of a deadly weapon in a manner likely to cause death. *See Mihay v. State*, 515 N.E.2d 498, 499 (Ind.1987), *reh'g denied.* More importantly, the intent to kill may occur as instantaneously as successive thoughts. *Id.* As such, the fact that no more than five seconds elapsed between the ERT's entry into Hollars' house and Hollars' gunshot is not dispositive. We also note that before entering Hollars' house, the ERT: (1) knocked on the outer door and loudly announced their presence; (2) broke the glass to unlock the outer door; (3) knocked on the steel door and loudly announced their presence; and (4)

used a battering ram to open the steel door. In addition, after entering the house but before entering the bedroom, the officers yelled "police, search warrant." (Tr. pp. 248, 343). This evidence supports a conclusion that Hollars had time to form the specific intent to kill before he fired his gun. That is, while the jury in this case certainly *could* have concluded that Hollars did not have time to form the requisite intent to kill, the evidence is not so lopsided that the jury *should* have done so. *See Leroy,* 878 N.E.2d at 250. Again, relief under the "thirteenth juror" principle is appropriate only if the jury's determination is unreasonable or improper. *Ingersoll–Rand Corp.,* 557 N.E.2d at 684. This is not such a case. Therefore, the trial court abused its discretion in reversing the jury's verdict on this ground.[4]

### CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion by granting Hollars' motion to correct error because the three perceived errors do not warrant a new trial on the attempted murder charge, either individually or collectively. Therefore, we reverse the judgment of the trial court and direct the trial court to reinstate the jury's verdict and Hollars' sentence.

Reversed.

BAKER, C.J., and ROBB, J., concur.

---

[4.] Interestingly, if we were to uphold the trial court's grant of a new trial on this ground, the State would be in a maddening quandary. To the extent that the trial court granted Hollars a new trial based on its objections to the timing and manner of the execution of the search warrant, a conviction could never stand because those circumstances will always be the same and would always justify a new trial.