## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 24 2019, 7:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Matthew D. Barrett
Logansport, Indiana

Robert Leirer Justice
Logansport, Indiana

ATTORNEY FOR APPELLEE

J. Thomas Vetne
Jones Obenchain, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mary Grigsby,

*Appellant-Plaintiff,*

v.

Martin's Super Markets, Inc.,

*Appellee-Defendant.*

June 24, 2019

Court of Appeals Case No.
18A-CT-1660

Appeal from the Cass Superior Court

The Honorable James K. Muehlhausen, Judge

Trial Court Cause No.
09D01-1506-CT-19

**Mathias, Judge.**

[1]  Following a trial in Cass Superior Court, the jury found against Mary Grigsby ("Grigsby") in her negligence claim against Martin's Super Markets, Inc.

("Martin's"). On appeal following an unsuccessful motion to correct error, Grigsby presents four issues, which we restate as:

I.      Whether the trial court abused its discretion by failing to strike a photograph that Martin's designated in opposition to Grigsby's motion for partial summary judgment;

II.     Whether the trial court erred by not granting Grigsby's motion for partial summary judgment on the issue of comparative fault;

III.    Whether the trial court abused its discretion by permitting Martin's to impeach Grigsby's trial testimony by using her prior deposition testimony; and

IV.     Whether the trial court erred by denying Grigsby's motion to correct error.

[2]     We affirm.

## Facts and Procedural History

[3]     On July 5, 2013, Grigsby went to Martin's grocery store in Logansport, Indiana, with her aunt, Karen Sue Grigsby ("Aunt Susie"), and her grandmother. Grigsby went to the soft drink aisle to purchase some soda pop. As she approached the aisle, she stepped past an endcap display of soda pop and a yellow, cone-shaped "wet floor" caution sign that had been placed near the entrance to the aisle but in the middle of the main aisle. The sign had been set up because, at some point before Grigsby's arrival, a Martin's employee had mopped up a spill, and the floor was wet. Grigsby walked past the caution sign without noticing it.

[4] Although the floor at the end of the aisle was still wet (she later described the moisture on the floor as "puddles," Tr. Vol. 2, p. 222), Grigsby did not see the moisture on the floor. When Grigsby turned to face the shelves of soda pop, she slipped and fell. Specifically, her left foot slipped, and her left knee struck the floor tile. She landed on her bottom, and her left leg flexed backward such that her toes touched her buttocks. Her left sandal also came off her foot. Grigsby pulled herself back up and noticed that her pants were wet at the knee and the side of her bottom. Her knee also began to swell and cause her pain. Grigsby put her left sandal back on but did not notice any moisture on it. She also did not notice any moisture in the area where she fell, but she did see that the floor at the entrance to the aisle was wet. She also then noticed the yellow caution sign in the middle of the main aisle, which she stated was not visible from the spot where she fell.

[5] Aunt Susie came to the aisle, and Grigsby informed her that she had fallen. Aunt Susie then walked down the aisle toward the front of the store to report the fall. She then returned to the end of the aisle near the endcap. Aunt Susie did not notice any wetness on the floor at this time, but she did notice moisture in the area of the endcap at the end of the aisle. While Aunt Susie was reporting the incident, an unknown elderly woman moved the caution sign closer to the endcap.

[6] The Martin's manager on duty that day, Chad Fultz ("Fultz"), reported to the aisle and saw Grigsby and her aunt still standing there. Fultz filled out an incident report, but incorrectly reported that Grigsby had fallen at the end of the

aisle, where the earlier spill had been mopped up, as no one informed him that Grigsby had fallen inside the drink aisle. Fultz reported that Grigsby "was walking and did not see wet floor sign, slipped and fell on wet floor. Floor had just been mopped due to a soda spill." Ex. Vol. 14, Plaintiff's Ex. 1. Fultz listed the injury type as "Fall, swollen knee," and the body part affected as "Left knee." *Id*. Fultz took photos of the area around the endcap, including the now-moved caution sign. Fultz offered to call an ambulance for Grigsby, but she declined. Grigsby and her family then paid for their groceries and left the store.

[7] On June 29, 2015, Grigsby filed a negligence claim against Martin's. Martin's denied negligence and asserted several affirmative defenses, including comparative fault. On January 16, 2018, Grigsby filed a motion for partial summary judgment on the issue of the comparative fault. Martin's filed its response on January 31, 2018, and also moved for summary judgment on the issue of negligence. On February 13, 2018, Grigsby filed a response to the motion for summary judgment and also moved to strike a photo Martin's included in designated evidence, i.e. a photo of the end of the aisle showing the caution sign after it had been moved by the customer. On February 16, 2018, the trial court denied both parties' motions for summary judgment, but never formally denied Grigsby's motion to strike.

[8] A four-day jury trial commenced on March 13, 2018. At the conclusion of the trial, the jury found in favor of Martin's, assigning Martin's no fault. On April 6, 2018, Grigsby filed a motion to correct error, claiming that the jury's verdict was against the weight of the evidence and requesting a new trial. Five days

later, the trial court scheduled a hearing on Grigsby's motion to be held on June 15, 2018. Martin's filed its response on April 17, 2018. The trial court then held a hearing on Grigsby's motion to correct error as scheduled and issued its order denying Grigsby's motion to correct error on June 28, 2018. Grigsby now appeals.

## I.   *Motion to Strike Photograph*

[9]     Grigsby first argues that the trial court erred by denying her motion to strike a photograph of the scene of the fall that Martin's included in its summary judgment brief. A trial court has broad discretion in ruling on a motion to strike designated evidence, especially with regard to the admissibility of that evidence. *Moryl v. Ransone*, 4 N.E.3d 1133, 1138 n.5 (Ind. 2014) (citing *Kroger Co. v. Plonski*, 930 N.E.2d 1, 5 (Ind. 2010)). Whether a sufficient evidentiary foundation has been established is also a matter within the discretion of the trial court. *Reef v. Asset Acceptance, LLC*, 43 N.E.3d 652, 653–54 (Ind. Ct. App. 2015) (citing *Nasser v. State*, 646 N.E.2d 673, 676 (Ind. Ct. App. 1995)). "'To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" *Id*. at 654 (citing Ind. Evidence Rule 901(a)). "Unsworn statements and unverified exhibits do not qualify as proper [summary judgment] evidence." *Id*. (citing *Smith v. Delta Tau Delta, Inc.*, 9 N.E.3d 154, 159 (Ind. 2014)).

[10]    The photograph at issue, reproduced below, was used as an exhibit during Grigsby's deposition. During her deposition, Grigsby testified that the photo

did not match the scene as she remembered it, as the cartons of soda pop appeared to be a different color and because the caution cone was in a different position, i.e. closer to the entrance to the soft drink aisle and not in the middle of the main aisle where it was when she fell. *See* Appellant's App. Vol. 2., p. 194–97. Still, she recognized the picture as being the back of the store and depicting the drink aisle, and she marked the photo with an "X" to show where she fell, with an "O" to show where a man stocking the endcap was, and with a line to show the area where water or other liquid was still located on the floor:



Appellant's App. Vol. 3, p. 66.[1]

[11] This photograph was included in the Martin's summary judgment brief, with Martin's explaining how Grigsby diagramed the photograph to show where she had fallen, where the moisture was on the floor, and where the person restocking the endcap was standing. Appellant's App. Vol. 2, pp. 143–44. Martin's did not claim that the photograph depicted where the caution sign was at the time when Grigsby fell. *See id.* Moreover, in her own motion for partial summary judgment, to which Martin's was responding, Grigsby explained to the trial court that there was no caution sign in the drink aisle itself, that the caution sign was located in the main aisle, and that someone moved the caution sign to be closer to the liquid at the end of the drink aisle *after* Grigsby had fallen. *Id.* at 25–26. And in her response to the Martin's summary judgment brief, Grigsby reiterated these facts, citing to the relevant portions of her deposition. *Id.*, Vol. 3 at pp. 39–40.

[12] Under these facts and circumstances, we cannot say that the trial court abused its discretion by failing to strike the photograph included in the Martin's summary judgment brief. We reject Grigsby's assertion that the trial court "necessarily considered the photograph as competent evidence showing (incorrectly) what the scene looked like at the time of Grigsby's fall." Appellant's Br. at 30. To the contrary, the photograph was used essentially for

---

[1] We include this photograph only for demonstrative purposes. The version included in the Appellant's Appendix appears to have been photocopied and is difficult to make out. The clearer, color version we have reproduced above comes from page 25 of the Appellee's Brief.

demonstrative purposes to assist the trial court in determining the location of Grigsby's fall. Martin's did not use the photograph as proof as to where the sign was located at the time of Grigsby's fall. The trial court was well aware that it was undisputed that the sign was in the main aisle, not the drink aisle where Grigsby fell, and Grigsby's own evidence and argument demonstrated that the sign had been moved after Grigsby's fall. In short, we see no reason to reverse the trial court's judgment based on the inclusion of this photograph in the summary judgment materials.[2]

## II. Grigsby's Motion for Partial Summary Judgment

[13] Grigsby next argues that the trial court erred by denying her motion for partial summary judgment on the issue of comparative fault. Our standard for reviewing a trial court's ruling on a motion for summary judgment is well settled:

> A trial court should grant a motion for summary judgment only when the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The trial court's grant of a motion for summary judgment comes to us cloaked with a presumption of validity. An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines

---

[2] In her reply brief, Grigsby argues that Martin's has waived any argument regarding the trial court's denial of her motion to strike the photograph by failing to respond to her motion to strike before the trial court. However, "a party who has prevailed at the trial court, i.e., the appellee, 'may defend the trial court's ruling on any grounds, including grounds not raised at trial.'" *Ind. Bureau of Motor Vehicles v. Gurtner*, 27 N.E.3d 306, 312 (Ind. Ct. App. 2015) (quoting *Citimortgage v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012)). Thus, the fact that Martin's did not file with the trial court any response to Grigsby's motion to strike does not act as an impediment to the argument presented by Martin's on appeal.

whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. But a de novo standard of review applies where the dispute is one of law rather than fact. We examine only those materials designated to the trial court on the motion for summary judgment. Our standard of review is not altered by the fact that the parties filed cross motions for summary judgment. . . . We must affirm the trial court's entry of summary judgment if it can be sustained on any theory or basis in the record.

*E. Point Bus. Park, LLC v. Private Real Estate Holdings, LLC*, 49 N.E.3d 589, 595–96 (Ind. Ct. App. 2015) (citing *Altevogt v. Brand*, 963 N.E.2d 1146, 1150 (Ind. Ct. App. 2012)).

[14] Grigsby argues that there were no genuine issues of material fact regarding any comparative fault on her part. That is, she claims that the evidence is undisputed that a spill had occurred sometime prior to her fall; that an employee or agent of Martin's had mopped the spill, leaving the floor near the endcap wet; that the caution sign was placed in the middle of the main aisle, not in the drink aisle where she fell; that she could not see the caution sign from where she fell; that she walked through the puddles of liquid left on the floor; and that she fell after she walked through the liquid, injuring herself. As Grigsby was the movant, this might have established, prima facie, that she was not at fault for her fall.

[15] However, viewing the evidence most favorable to Martin's, the non-moving party, we can only conclude that Martin's established the existence of a genuine

issue of material fact regarding whether Grigsby was at all at fault for her fall. First, the designated evidence demonstrates the existence of an issue of fact regarding why Grigsby fell. Although Grigsby claims that she walked through the water or liquid left after the spill had been mopped up, her own deposition testimony reveals that it was unclear as to precisely why she fell. Specifically, Grigsby testified at the deposition that her sandal was not wet when she put it back on. In response to question of whether there was water on her sandal, Martin responded, "No, no. . . . As I think about it, there was not." Appellant's App. Vol. 2, p. 207. She also testified that there was no water on the floor at the spot where she fell; instead, the water (or other liquid) was located at the end of the aisle. And when asked if she knew why she fell if there was no water on her sandal, Grigsby testified, "No, I do not know why I fell." *Id*. at 208. Moreover, Grigsby acknowledged that the caution sign was in the main aisle, and that she did not see it. Thus, there is a question as to whether the sign was properly placed and whether Grigsby should have seen the sign or the liquid if she was exercising ordinary care.

[16] The fact that Grigsby fell is insufficient in itself to prove that she was not at fault. *See Scott Cty. Family YMCA, Inc. v. Hobbs*, 817 N.E.2d 603, 605 (Ind. Ct. App. 2004) (noting that this court has held before that "[f]alling and injuring one's self proves nothing. Such happenings are commonplace wherever humans go.") (quoting *Wright Corp. v. Quack*, 526 N.E.2d 216 (Ind. Ct. App. 1988), *trans. denied*); *see also Ogden Estate v. Decatur County Hospital*, 509 N.E.2d 901, 903 (Ind. Ct. App. 1987) (cited in *Quack*).

[17]   Viewing the designated evidence in light of the non-moving party, we agree with the trial court that there was a genuine issue of material fact regarding the precise reason Grigsby fell and whether she was at fault for not seeing the sign and/or not seeing the water in the floor. These factual questions were for the jury to determine, which they ultimately did in favor of Martin's. In other words, the fact that the jury found in favor of Martin's further demonstrates the existence of genuine issues of material fact. *See Keith v. Mendus*, 661 N.E.2d 26, 37 (Ind. Ct. App. 1996) (holding that where the evidence gave rise to conflicting inferences that were later resolved by the trier of fact, summary judgment was inappropriate), *trans. denied*; *see also* 2 Ind. Law Encyc. Appeals § 457 ("Where the outcome of the case is not changed by the denial of a motion for summary judgment, any error in denying the motion is harmless.") (citing *Emmco Ins. Co. v. Ind. Farmers Mut. Ins. Co.*, 152 Ind. App. 212, 217, 283 N.E.2d 404, 406 (1972)).

### III.   Impeachment of Grigsby's Trial Testimony

[18]   Grigsby next argues that the trial court abused its discretion by permitting Martin's to impeach her trial testimony by admitting portions of her deposition. Questions regarding the admission of evidence are entrusted to the sound discretion of the trial court. *Arlton v. Schraut*, 936 N.E.2d 831, 836 (Ind. Ct. App. 2010), *trans. denied*. A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if its decision is without reason or is based upon impermissible considerations. *Id.* "However, to the extent that the evidentiary issue depends

on the construction of a rule of evidence, and not the rule's application to any particular set of facts, our review is de novo." *Id*. (citing *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 277 (Ind. 2003)).

[19]     In her deposition, Grigsby testified as follows on cross-examination regarding the question of whether she saw moisture on her sandal:

> Q.     Okay. Mary, earlier I asked you about what you saw on your pant leg. You told me it was a little damp. Do you recall that?
>
> A.     Yes.
>
> Q.     Okay. Then I asked you if you saw water on your flip flop, and you told me you didn't remember that.
>
> A.     I don't recall.
>
> Q.     Okay. So when you say that you walked through this - - you got moisture on your shoe from walking through this, is that what you're guessing happened to you?
>
> A.     No. That's what happened.
>
> Q.     So how do you know there was moisture on your shoe if you didn't see it?
>
> A.     Because when I had fallen and my flip flop came off.
>
> Q.     What happened?
>
> A.     **There was -- like you could see, like, on the bottom.**
>
> Q.     Of your flip flop?
>
> A.     Yes.

Q.      Earlier I asked you if you saw any moisture on your flip flop and you said you didn't recall that. Are you now saying you did see moisture on your flip flop after the fact?

A.      Yes.

Q.      Okay. Why are you adding that now?

A.      **I don't think there was -- no, there wasn't. I'm sorry. No, there wasn't.**

Q.      **There wasn't water on your flip flop?**

A.      **No, no.**

Q.      Okay.

A.      **As I think about it now, no, there was not.**

Appellant's App. Vol. 2, pp. 206–07 (emphases added).

[20]    However, at trial, Grigsby testified that she never looked at her sandal after her fall. She answered "No, sir," on direct-examination when asked by her counsel asked, "did you ever pick up your left sandal and inspect it?" Tr. Vol. 2, p. 220. On cross-examination, Grigsby further testified:

Q.      Okay. When you fell, your flip-flop came off?

A.      Yes.

Q.      **And you looked at your flip-flop after you fell, did you not?**

A.      **Yes.**

Q.      And there was no moisture on your flip-flop, was there?

A. There was, it, it landed, my, my flip-flop landed face up as you were going to slip, as I was going to slip my foot into my sandal so there was, **there was no moisture on the top of my sandal.**

Q. Okay.

A. **So I did not pick the sandal up to investigate to see if there was water on the bottom of the sandal.**

Q. You didn't?

A. I did not because if it's, if it's lying face, if it's lying face up and you're wanting to put your shoe back on, you're just going to slip your shoe, your foot in your shoe.

Tr. Vol. 3, p. 54 (emphases added).

[21] Thus, there was an inconsistency in Grigsby's testimony as to whether she looked at the bottom of her sandal and whether she saw moisture on the bottom of her sandal. At her deposition, Grigsby initially indicated that she had looked at the bottom of her sandal and saw moisture, but she then later recalled that she did not see water on her sandal. At trial, however, Grigsby clearly stated that she did not look at the bottom of her sandal but that she did see water or moisture on her sandal, albeit on the top.

[22] In attempt to confront Grigsby with this inconsistency, Martin's requested permission to read the relevant portions of Grigsby's deposition into the record pursuant to Indiana Trial Rule 32, which provides in relevant part:

**(A) Use of depositions.** At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a

deposition, so far as admissible under the Rules of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition, by or against any party who had reasonable notice thereof or by any party in whose favor it was given in accordance with any one [1] of the following provisions:

> (1) **Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.**

> (2) **The deposition of a party**, or an agent or person authorized by a party to testify or furnish such evidence or of anyone who at the time of taking the deposition was an officer, director, or managing agent, executive officer or a person designated under Rule 30(B)(6) or 31(A) to testify on behalf of an organization, including a governmental organization, or partnership which is a party **may be used by an adverse party for any purpose**.

> * * *[3]

> **(B) Objections to admissibility.** Subject to the provisions of Rule 28(B) and subdivision (D)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any depositions or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying. . . .

(emphases added).

---

[3] Trial Rule 32(A)(3) concerns the use of depositions of non-party witnesses. Generally, depositions of non-party witnesses may be used "by any party for any purpose," but only if the witness is unavailable. *See id.*

[23] In the present case, the trial court apparently believed that the admission of the relevant portions of the deposition was improper unless Grigsby was unavailable as a witness.[4] On this issue, the trial court was incorrect, as Trial Rule 32(A)(1) clearly allows a deposition of any witness to be used for impeachment purposes, and Trial Rule 32(A)(2) allows the deposition of a witness who is a party to be used by an adverse party "for any purpose."

[24] Still, the trial court permitted counsel for Martin's to recall Grigsby as a witness and confront her with the relevant portions of her prior deposition testimony. Grigsby's counsel objected, claiming that the question had already been asked and answered. The trial court overruled the objection and permitted Martin's to impeach Grigsby with her prior deposition testimony. Tr. Vol. 5, pp. 25–28. On cross-examination, Grigsby's counsel elicited testimony attempting to explain her apparent inconsistency. *Id*. at 29.

[25] On appeal, Grigsby claims that the trial court abused its discretion by permitting Martin's to recall Grigsby as a witness and have her read portions of her prior deposition testimony. Grigsby claims that Martin's had already attempted to impeach Grigsby about her sandal on cross-examination and was simply attempting to further impeach her after its initial attempts and to use the deposition as substantive evidence.

---

[4] As noted in note 3, *supra*, this is generally true as to the deposition of non-party witnesses.

[26] With regard to Grigsby's claim that she had already been impeached with her prior statements, we fail to see how she was harmed by the additional admission of her prior deposition testimony. The admission of evidence that is merely cumulative of other properly admitted evidence is harmless. *Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 135 (Ind. 2005). But we do not consider the admission of Grigsby's prior deposition testimony to have been error at all.

[27] Grigsby cites *Kendall v. State*, 790 N.E.2d 122, 128 (Ind. Ct. App. 2003), *trans. denied*, for the general rule that "under [Evidence] Rule 613, once a witness has admitted an inconsistent prior statement, she has impeached herself and further evidence is unnecessary for impeachment." (citing *Appleton v. State*, 740 N.E.2d 122, 125 (Ind. 2001)). Evidence Rule 613(b) provides that "extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Notably, however, "[t]his subdivision (b) *does not apply to an opposing party's statement* under Rule 801(d)(2)." (emphasis added). Here, Grigsby was an opposing party, and Evidence Rule 613(b) is therefore inapplicable.[5]

[28] Instead, our Evidence Rules provide that a prior statement by an opposing party offered against them is admissible as it is "not hearsay" by definition. Evid. R. 801(d)(2). Indeed, prior inconsistent testimony by any witness, even if not a

---

[5] Evidence Rule 613(a) provides that "When examining a witness about the witness's prior statement, a party need not show it or disclose its content to the witness. But the party must, on request, show it or disclose its contents to an adverse party's attorney." This subsection is not at issue here.

party, may be offered as substantive evidence if the statement was given under penalty of perjury at a prior deposition. Ind. Evid. Rule 801(d)(1)(A); *see also* T.R. 32(A)(2) ("The deposition of a party . . . may be used by an adverse party for any purpose.").

[29] As noted by our supreme court in *Appleton,* the use of a prior inconsistent statement of a non-party witness as substantive evidence is now prohibited. 740 N.E.2d at 124 (citing *Modesitt v. State*, 578 N.E.2d 649, 652–54 (Ind. 1991)). But a prior inconsistent statement made by a party, or any witness if the prior statement was given under oath, may be used as substantive evidence, not merely impeachment evidence. *See Appleton*, 740 N.E.2d at 124 (citing *Modesitt*, 578 N.E.2d at 653); *see also Farris v. State*, 732 N.E.2d 230, 234 (Ind. Ct. App. 2000) (noting that evidence admissible under Evidence Rule 801(d)(1)(A) is admissible as substantive evidence).

[30] Thus, because she was a party opponent, Grigsby's prior deposition testimony was not hearsay and admissible as *substantive* evidence under Evidence Rule 801(d)(1)(A), and was not admissible simply as impeachment evidence under Evidence Rule 613(b). Because Grigsby's prior deposition testimony was admissible for substantive purposes, we cannot say that the trial court abused its

discretion when it overruled Grigsby's objection to the admission of her prior statements and denied her motion to strike the deposition testimony.[6]

### *IV. Motion to Correct Error*

[31] Lastly, Grigsby argues that the trial court abused its discretion when it denied her motion to correct error in which she requested a new trial. *See* T.R. 59(J). In general, we review a trial court's ruling on a motion to correct error only for an abuse of discretion. *Sandberg Trucking, Inc. v. Johnson*, 76 N.E.3d 178, 183 (Ind. Ct. App. 2017).[7] Here, Grigsby bore the burden of proof at trial, and she therefore appeals from a negative judgment. "A party who had the burden of proof at trial appeals from a negative judgment and will prevail only if it establishes that the judgment is contrary to law." *Cty. of Lake v. Pahl*, 28 N.E.3d 1092, 1099 (Ind. Ct. App. 2015) (citing *Hoose v. Doody*, 886 N.E.2d 83, 89 (Ind. Ct. App. 2008), *trans. denied*), *trans. denied*. A judgment is contrary to law only when the evidence is without conflict, and all reasonable inferences to be drawn from the evidence lead to only one conclusion, yet the trial court reached a different conclusion. *Id.*

---

[6] Grigsby also briefly complains about other alleged "misconduct" by defense counsel at trial. Grigsby, however, fails to fully develop this argument, nor does she cite any authority in support thereof. We therefore decline to address it as a separate argument. *See Aguayo v. City of Hammond Inspection Dep't,* 53 N.E.3d 551, 554 n.2 (Ind. Ct. App. 2016) (declining to address an under-developed argument) (citing Ind. Appellate Rule 46(a)(8)(A)).

[7] However, to the extent a motion to correct error presents an issue of law, our review is de novo. *Id.* (citing *Ind. Bureau of Motor Vehicles v. Charles*, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009).

[32]  With regard to Grigsby's request for a new trial, this court has previously explained that, when considering whether to grant a motion for a new trial:

> The trial judge sits as a "thirteenth juror" and must determine whether in the minds of reasonable men a contrary verdict should have been reached. As the thirteenth juror, the trial judge 1) hears the case along with the jury, 2) observes witnesses for their credibility, intelligence, and wisdom, and 3) determines whether the verdict is against the weight of the evidence. On appeal, this [c]ourt cannot assume the responsibility of weighing conflicting evidence.

*Warrick v. Stewart*, 29 N.E.3d 1284, 1289 (Ind. Ct. App. 2015) (citations and internal quotation marks omitted).

[33]  If the evidence is conflicting, the trial court should deny a request for a new trial. *Ingersoll-Rand Corp. v. Scott*, 557 N.E.2d 679, 683 (Ind. Ct. App. 1990), *trans. denied*. To hold otherwise "would be to hold that a verdict may be upheld only if the evidence is undisputed and when a trial court would have been compelled to direct a verdict for the winning party." *Id*. If this were the case, "[a] verdict could never withstand a Trial Rule 50 or 59(J) attack where the evidence is conflicting but where reasonable minds might differ as to the result." *Id*. Otherwise, litigation might never end, and after a verdict for either party following a new trial, the trial court would be compelled to view the conflicting evidence and to grant relief to the losing party. *Id*. at 684.

[34]  As set forth in *Ingersoll-Rand*:

Mere conflicts or inconsistencies in testimony favoring the verdict do not give rise to mandatory operation of the Thirteenth Juror principle. The doctrine is not intended to invite the trial judge to cavalierly substitute his evaluation of the evidence in place of a contrary evaluation made by the jury. The relief is appropriate only if the jury's determination is unreasonable or improper. *Certainly, when the trial court has declined to intervene and has refused to set aside the verdict, an appellate tribunal is not permitted to do so unless the verdict is wholly unwarranted under the law and the evidence.*

*Id.* (emphasis added); *see also Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1056 (Ind. 2003) ("When, as in this case, the trial court declines to intervene and refuses to set aside the jury verdict, it is not the province of an appellate court to do so 'unless the verdict is wholly unwarranted under the law and the evidence.'") (quoting *Indian Trucking v. Harber*, 752 N.E.2d 168, 179 (Ind. Ct. App. 2001)).[8]

[35] Here, we cannot say that the trial court's ruling on Grigsby's motion to correct error was wholly unwarranted under the law and evidence. In making her argument, Grigsby relies on the evidence and the inferences in her favor that

---

[8] To the extent that Grigsby argues that there was insufficient evidence to support the negative judgment, this argument is unavailable on appeal. "[A] party's failure to present evidence at trial sufficient to sustain the burden of proof on an essential element of his claim is clearly not grounds for a new trial." *DeVittorio v. Werker Bros.*, 634 N.E.2d 528, 532 (Ind. Ct. App. 1994); *see also McCarty v. Sheets*, 423 N.E.2d 297, 301 (Ind. 1981) (holding that appellant-plaintiff's argument that the trial court's judgment denying his claim from relief was contrary to evidence "present[ed] no error for review, because [the plaintiff] [wa]s appealing from a negative judgment."); *Lindenborg v. M & L Builders & Brokers, Inc.*, 158 Ind. App. 311, 325, 302 N.E.2d 816, 824 (1973) ("An attack against the sufficiency of the evidence supporting a negative judgment is an improper form of appeal, and any contention that the judgment is not supported by the evidence or is contrary thereto, presents nothing for the consideration of this Court.").We therefore consider Grigsby's argument as being that the trial court's judgment is contrary to law.

can reasonably be drawn from this evidence. That is, she claims that she was an invitee who slipped on water or other liquid that was in the floor and did so in an area without a visible warning sign. But the jury (and the trial court in ruling on the motion to correct error) could consider the evidence and the reasonable inferences that did not favor Grigsby's claims.

[36]     Considering this evidence, we note that there was a caution sign in the main aisle, close to the area where the earlier spill had been cleaned up at the endcap of the drink aisle. Grigsby simply did not see this sign. Although she claims it is obvious that she walked through this moisture and slipped as a result, the jury was under no obligation to credit her testimony on this issue. Clearly, it is undisputed that there was liquid at the end of the aisle. But Grigsby's Aunt Susie and the Martin's manager did not see any liquid inside the aisle in the area where Grigsby slipped. Grigsby herself was inconsistent as to whether she saw water or liquid on her sandal after she slipped. It is not outside the realm of possibility that Grigsby did not walk through the liquid at all and simply slipped while wearing sandals. It is also possible that the jury simply thought that Grigsby herself was solely at fault for failing to notice the caution sign and failing to see the water in the floor where she was walking. *See Podemski v. Praxair, Inc.*, 87 N.E.3d 540, 547 (Ind. Ct. App. 2017) (noting that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge

or obviousness."), *trans. denied* (quoting Restatement (Second) of Torts § 343A(1)).

[37] The bottom line is that a jury decided that Grigsby was at fault for her fall. Given the evidence and inferences favorable to the jury's verdict, we cannot say that its decision was contrary to law. The trial court therefore was well within its discretion to deny Grigsby's motion for a new trial.

## Conclusion

[38] The trial court did not abuse its discretion by failing to grant Grigsby's motion to strike the photograph of the scene of her fall, nor did the trial court err by denying her motion for summary judgment on the issue of comparative fault. The trial court did not abuse its discretion by admitting portions of Grigsby's prior deposition testimony, as the prior deposition of a party witness is not hearsay and admissible as impeachment and substantive evidence. Lastly, even though Grigsby presented evidence that a reasonable jury could have viewed as supporting her claim for negligence, a reasonable jury could also have discredited her testimony and determined that she, not Martin's, was at fault for her fall. Therefore, the trial court did not clearly err by denying Grigsby's motion for a new trial, and we affirm the judgment of the trial court.

[39] Affirmed.

Vaidik, C.J., and Crone, J., concur.